T.C. Memo. 2010-30

UNITED STATES TAX COURT

JAMES BARNES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8219-07L.                    Filed February 22, 2010.

    R determined to proceed with collection of P's
income tax liability for 2002 without allowing P to
challenge the underlying tax liability at a sec. 6330,
I.R.C., hearing before the Office of Appeals.  R moved
for summary judgment.

    <u>Held</u>:  Pursuant to sec. 6330(c)(2)(B), I.R.C., P
is entitled to raise the existence or amount of the
underlying tax liability at an Appeals hearing, unless
P has previously received a notice of deficiency or
otherwise had an opportunity to dispute the liability.
P did not receive the notice of deficiency for 2002,
and R has failed to allege or show that P deliberately
refused delivery of the notice of deficiency.  R's
motion for summary judgment will be denied and this
case will be remanded to the Office of Appeals for
further hearing.

James Barnes, pro se.

Alisha M. Harper, for respondent.


MEMORANDUM OPINION

RUWE, Judge:  The petition in this case was filed in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination).[1]  This case is before the Court on respondent's motion for summary judgment.  We must decide whether the determination by respondent's Appeals Office to proceed with collection action with respect to petitioner's unpaid income tax liability for tax year 2002 was proper.

## Background

At the time the petition was filed, petitioner resided in Kentucky.

Respondent sent to petitioner a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, dated September 10, 2005, regarding petitioner's unpaid tax for 2002.  Petitioner submitted to respondent a Form 12153, Request for a Collection Due Process Hearing, dated September 30, 2005.  In the Form 12153 petitioner requested a face-to-face hearing (section

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

6330 hearing) and informed the Appeals Office that he would be audio recording the section 6330 hearing. Petitioner also indicated that one of the issues he wanted to address was whether respondent had followed proper procedures in making the assessment against him.

By letter dated December 20, 2005, respondent's Appeals Office acknowledged receipt of petitioner's request to audio record the section 6330 hearing but denied his request for a face-to-face conference, stating: "Face-to-face conferences are not allowed if the only items that a taxpayer raises are frivolous or groundless." Respondent did not identify which of petitioner's arguments were considered frivolous or groundless.[2]

By letter dated January 9, 2006, petitioner asserted that he had relevant, nonfrivolous issues to discuss at the section 6330 hearing and that it had to be a face-to-face hearing so that he might audio record it. Petitioner also raised the issue of the underlying tax liability and stated: "I have no idea as to how or where the IRS got these numbers. [A]lthough you claim that I have had an opportunity to dispute the liability, I don't even recall ever receiving any notification or explanation from the

---

[2] It appears that petitioner did not file a return for 2002. Internal Appeals Office records indicate that the Appeals Office had identified petitioner as a "frivolous filer". Form 12153-A, Referral Request for CDP Hearing and Request for CDPTS Input, dated "11-2-5" indicates that petitioner "mentions frivolous arguments in the past, although DI does not show any frivolous filer information."

IRS that explains how they came up with these numbers against me."

Almost 9 months later, respondent's Appeals Office sent to petitioner a letter dated September 30, 2006, which states, in pertinent part:

> You requested a face-to-face conference in order to dispute the underlying liability:  A Notice of Deficiency for tax year ended 12/2002 was mailed to you on November 30, 2004 at * * * Louisville, KY 40272-2342040.  (You apparently elected not to claim the Notice.)  The Notice afforded you the opportunity to dispute the liability in Tax Court prior to its assessment.  Therefore, you may not raise challenges to the existence or amount of the tax liability specified on the CDP Notice.
>
> The Appeals Office does not provide a face-to-face conference if the only items a taxpayer wishes to discuss are frivolous or, may otherwise not be raised in the hearing.  During the hearing, we must consider whether the IRS met all the requirements of any applicable law or administrative procedure, and any non-frivolous issues you wish to discuss.  * * *

In response, by letter dated October 13, 2006, petitioner disputed the determination not to grant him a face-to-face conference and the determination that he had been given a prior opportunity to dispute his underlying tax liability.  In a letter dated October 30, 2006, the Appeals officer stated that petitioner's request had been transferred to the nearest Appeals Office "for a face-to-face hearing."  Thereafter, the newly assigned settlement officer (whose office was in South Bend, Indiana) sent to petitioner (at his Louisville, Kentucky, address) a followup letter, dated December 7, 2006, indicating

that petitioner would not be allowed a face-to-face hearing and scheduling a telephone conference call for December 21, 2006. The letter did, however, advise petitioner that he might be allowed a face-to-face section 6330 hearing if he were to provide to the Appeals Office the nonfrivolous issue in writing within 14 days from the date of the letter.

By letter dated December 14, 2006, petitioner responded to the settlement officer, stating that he would not be able to participate in the telephone conference[3] and explaining again that he had no knowledge of ever receiving a notice of deficiency. The Appeals Office did not receive petitioner's letter until December 29, 2006. Before receipt of petitioner's letter, however, the settlement officer had sent to petitioner a

---

[3] Petitioner's letter states in part:

Regretfully, I will not be able to participate in this telephone conference. The Appeals Office where my pre-scheduled hearing is to be held, is located in Indiana, I currently reside in Kentucky. But I am certain we can agree on a mutually convenient date and location, sometime in the near future. Knowing that I requested for a FACE-TO-FACE hearing, why did the IRS appoint someone in the South Bend, IN Office to conduct my CDP Hearing? The South Bend, IN Office is miles away from my place of residence. That's hours worth of driving alone, which I can not afford. This is most inconvenient and unacceptable. I find it hard to believe that the IRS does not have a local office in Louisville, KY. Please understand that I am NOT refusing to participate in my CDP Hearing. I am just asking the IRS to assist in making this process a little bit more convenient for me that I may be able to attend the FACE-TO-FACE Hearing that I initially requested.

letter dated December 21, 2006, which indicated that petitioner neither called for his scheduled telephone conference nor indicated that the date and/or time were inconvenient.  The letter also afforded petitioner an additional 14 days to provide information for consideration by the Appeals Office before making a determination.

In response to the settlement officer's letter dated December 21, 2006, petitioner, in a letter dated January 3, 2007, took exception to the settlement officer's statement that petitioner had not indicated that the scheduled date for the telephone conference was inconvenient, but otherwise did not provide any further information for the Appeals Office to consider before making its determination.

Respondent's Appeals Office issued to petitioner a notice of determination dated March 7, 2007.  On April 9, 2007, petitioner filed an incomplete petition in which he generally contested the determination made by the Appeals Office and requested assistance from the Court.  In an amended petition, filed on October 12, 2007, petitioner alleged that "Respondent did not meet all the applicable requirements during the Collection Due Process Hearing" and that he was not allowed the "opportunity to challenge the liability of the assessed tax."

## Discussion

This case is before us on respondent's motion for summary judgment, to which petitioner objects. Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. See FPL Group, Inc. v. Commissioner, 116 T.C. 73, 74 (2001). Rule 121(a) provides that either party may move for summary judgment upon all or any part of the legal issues in controversy. Full or partial summary judgment is appropriate where there is no genuine issue as to any material fact and a decision may be rendered as a matter of law. See Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). Respondent, as the moving party, bears the burden of proving that no genuine issue exists as to any material fact and that he is entitled to judgment as a matter of law. See Bond v. Commissioner, 100 T.C. 32, 36 (1993); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). In deciding whether to grant summary judgment, the factual materials and the inferences drawn from them must be considered in the light most favorable to the nonmoving party. See Bond v. Commissioner, supra at 36; Naftel v. Commissioner, supra at 529.

Section 6330(a)(1) provides that no levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of the right to a hearing under this section before such levy is made. The notice must

include in simple and nontechnical terms the right of the person to request a hearing to be held by the Internal Revenue Service (IRS) Office of Appeals. Sec. 6330(a)(3). Section 6330(c) governs the conduct of a requested hearing. At the hearing the person may raise any relevant issue relating to the unpaid tax or the proposed levy, including appropriate spousal defenses, challenges to the appropriateness of collection actions, and offers of collection alternatives. Sec. 6330(c)(2)(A). Section 6330(c)(2)(B) further provides that the person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for the tax liability or did not otherwise have an opportunity to dispute the tax liability. Under section 6330(c)(2)(B), the receipt of a notice of deficiency, not its mailing, is the relevant event.[4] Kuykendall v. Commissioner, 129 T.C. 77, 80 (2007); Conn v. Commissioner, T.C. Memo. 2008-186.

Among the attachments to respondent's motion for summary judgment were a declaration by the settlement officer who handled petitioner's case in the Appeals Office, a copy of the notice of

_____

[4] By contrast, for purposes of assessing a deficiency in tax, a notice of deficiency mailed to the taxpayer at his last known address is sufficient regardless of receipt or nonreceipt. Sec. 6212(b); Pietanza v. Commissioner, 92 T.C. 729, 735-736 (1989), affd. without published opinion 935 F.2d 1282 (3d Cir. 1991); Shelton v. Commissioner, 63 T.C. 193 (1974); Tatum v. Commissioner, T.C. Memo. 2003-115 n.4.

deficiency for 2002 dated November 30, 2004, and the envelope that respondent alleges contained the notice of deficiency mailed to petitioner on November 30, 2004. The face of the envelope shows that it was returned to respondent and was stamped unclaimed. Thus, there is no dispute that petitioner did not actually receive the notice of deficiency. Because it is undisputed that petitioner did not actually receive the notice of deficiency, he would normally have been entitled to challenge the underlying tax liability at the section 6330 hearing. See Kuykendall v. Commissioner, supra; Conn v. Commissioner, supra.

Even if the taxpayer did not actually receive the notice of deficiency, we have held that the taxpayer cannot dispute the underlying tax liability where there is a showing that he deliberately refused delivery of a notice of deficiency. Sego v. Commissioner, 114 T.C. 604 (2000). But absent sufficient evidence that a taxpayer deliberately refused delivery of the notice of deficiency, proof that the notice of deficiency was not actually received will be sufficient to entitle a taxpayer to dispute the underlying tax liability in a section 6330 proceeding. Conn v. Commissioner, supra; Calderone v. Commissioner, T.C. Memo. 2004-240; Tatum v. Commissioner, T.C. Memo. 2003-115; Carey v. Commissioner, T.C. Memo. 2002-209.

The notice of determination sent by the Appeals Office on March 7, 2007, alleged that the U.S. Postal Service attempted

delivery but that petitioner failed to pick up the notice of deficiency and that petitioner's conduct "constituted deliberate refusal of delivery". In his answer to petitioner's amended petition, respondent alleges "that Respondent sent a notice of deficiency for the year 2002 to Petitioner at his current address on November 30, 2004 and that Petitioner refused to claim said notice from the postal service." However, in his motion for summary judgment, respondent has not alleged that petitioner deliberately refused delivery of the notice of deficiency. On the record before us, we cannot conclude that petitioner deliberately refused its delivery or otherwise had an opportunity to dispute the liability for 2002 so as to preclude him from challenging his underlying tax liability at a hearing before the IRS Office of Appeals.

Attached to respondent's motion for summary judgment were the settlement officer's declaration and 19 exhibits, including numerous items of correspondence between the Appeals Office and petitioner, a copy of the administrative file relating to the examination of petitioner's income tax liability for 2002, and various transcripts for several years. Many of the exhibits contained multiple unnumbered pages that seem to be in no particular order. Many of the documents in the administrative file and most of the documents labeled as transcripts of petitioner's account are full of abbreviations, alphanumeric

codes, dates, and digits that are indecipherable and unintelligible without additional explanation. One page of the transcript related to the year 2002 that was intelligible shows entries for the substitute for return, withholding credits, and the tax assessment, all dated April 25, 2005. It also shows that the "Intent To Levy Collection Due Process Notice" was issued on September 10, 2005, and shows an entry dated September 19, 2005, for "Intent To Levy Collection Due Process Notice Return Receipt Signed 9-19/2005". Noticeably absent from this transcript is an entry for the issuance of a notice of deficiency.

One of the exhibits that respondent identified as the administrative file regarding the examination of petitioner's 2002 income tax liability included copies of the notice of deficiency dated November 30, 2004; the envelope in which it was allegedly mailed; a Form 12616, Correspondence Examination History Sheet, showing "11/30/04 Send 90day letter with report"; and a computer-generated printout for 2002 that shows "90-Day Statutory Notice 11/18/2004".[5] This seemingly conflicting information regarding the date of the notice of deficiency raises a question about its mailing date. The postmark on the photocopy of the envelope, which respondent alleges was returned to him unclaimed, is indecipherable as to its mailing date because of

---

[5] The terms "notice of deficiency", "90-day letter", and "90-day statutory notice" are often used synonymously.

what appears to be a label that has been marked "other" as the reason it was returned to the sender. The envelope has two "windows"; one to reveal the name and address of petitioner that was typed on the enclosed notice of deficiency, the other titled "Certified Mail". The certified mail number that would appear in this "window" is printed on the notice of deficiency. This indicates to us that the certified mail number was placed on the notice of deficiency before it was put into the envelope for delivery to the Post Office. Absent from the documentation respondent presented is a U.S. Postal Service Form 3877, Certified Mailing List, showing the date on which the notice of deficiency was mailed. A properly completed Form 3877 certified mailing list reflecting Postal Service receipt represents direct documentary evidence of the date and fact of mailing. Coleman v. Commissioner, 94 T.C. 82, 90 (1990).[6]

---

[6] In Hoyle v. Commissioner, 131 T.C. ___, ___ (2008) (slip op. at 12), we stated:

> We have held that exact compliance with Postal Service Form 3877 mailing procedures raises a presumption of official regularity in favor of the Commissioner and is sufficient, absent evidence to the contrary, to establish that the notice was properly mailed. Coleman v. Commissioner, 94 T.C. 91 (1990); see also United States v. Zolla, 724 F.2d 808, 810 (9th Cir. 1984).
> * * *

We also noted that Chief Counsel Notice CC-2006-019 (Aug. 18, 2006) states that when an Appeals officer identifies an irregularity in the assessment procedure, he may be required to examine underlying documents, such as the certified mailing list.
(continued...)

Also notably absent from the array of documents attached to respondent's motion for summary judgment is a Form 4340, Certificate of Assessments, Payments, and Other Specified Matters. The IRS Web site describes Form 4340 as follows:

> The Certified Transcript Program (CERTS) produces a common language transcript that gives the history assessments and payments on taxpayers' accounts. These transcripts are used in civil and criminal court cases. Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, is used by the government in litigation to certify extracts from a taxpayer's account. * * * [http://www.irs.gov/privacy/article/ 0,,id=174281,00.html.]

Unlike many of the printouts from respondent's computer system that were attached to respondent's motion for summary judgment, a Form 4340 is normally a readable and understandable history of transactions and events concerning a taxpayer's account for a particular taxable period. See Tufft v. Commissioner, T.C. Memo. 2009-59. Form 4340 is "'generally regarded as being sufficient proof, in the absence of evidence to the contrary, of the adequacy and propriety of notices and assessments that have been made.'" Orum v. Commissioner, 123 T.C. 1, 9 (2004) (quoting Gentry v. United States, 962 F.2d 555, 557 (6th Cir. 1992)), affd. 412 F.3d 819 (7th Cir. 2005). Generally, courts have held that Form 4340 provides at least presumptive evidence that a tax has been validly assessed under section 6203. Davis v.

---

[6](...continued)
Id. at ___ n.7 (slip op. at 15).

Commissioner, 115 T.C. 35, 40 (2000) (citing <u>Huff v. United States</u>, 10 F.3d 1440, 1445 (9th Cir. 1993), <u>Hefti v. IRS</u>, 8 F.3d 1169, 1172 (7th Cir. 1993), <u>Farr v. United States</u>, 990 F.2d 451, 454 (9th Cir. 1993), <u>Geiselman v. United States</u>, 961 F.2d 1, 5-6 (1st Cir. 1992), <u>Rocovich v. United States</u>, 933 F.2d 991, 994 (Fed. Cir. 1991), <u>United States v. Chila</u>, 871 F.2d 1015, 1017-1018 (11th Cir. 1989), and <u>United States v. Miller</u>, 318 F.2d 637, 638-639 (7th Cir. 1963)).

A clear record of relevant transactions is very important in a section 6330 court proceeding. See <u>Wright v. Commissioner</u>, 381 F.3d 41 (2d Cir. 2004), vacating and remanding T.C. Memo. 2002-312.[7] This is especially true in cases submitted to the Court on

---

[7] In <u>Wright v. Commissioner</u>, 381 F.3d 41, 44 (2d Cir. 2004), vacating and remanding T.C. Memo. 2002-312, which was a sec. 6330 case, the Court of Appeals for the Second Circuit described the unsatisfactory record before it as follows:

Here, the record that has been presented to this Court by Wright and the IRS is unhelpful. Wright's initial 2002 complaint to the Tax Court expressed bewilderment as to the nature of the tax balances that have been calculated (and recalculated) against him by the IRS. At oral argument and in its briefs, the IRS seemed equally unsure about several basic and crucial facts. The parties' confusion is understandable; the relevant timeline and tax amounts have been reconstructed using photocopied forms, computer screen printouts, and dot-matrix printouts of tax account balances. Many of these records have no supporting explanation (and therefore are inscrutable to any non-employee of the IRS), many are from time periods that are not the same, and even the documents that are from similar time periods often contain amounts that are inexplicably contradictory.

a motion for summary judgment, where there is no opportunity to question witnesses about the meaning of coded computer transcripts that might otherwise be indecipherable or unintelligible to a reviewing court. The Chief Counsel for the IRS recognized this and has instructed his attorneys as follows:

> A certified copy of an updated Form 4340 transcript should also be submitted with all summary judgment motions. The Form 4340 transcript has been consistently requested by Tax Court judges in summary judgment cases. Even though this transcript is prepared after the issuance of the notice of determination, submission of the Form 4340 is not a violation of the record rule because it generally contains the same information originally reviewed by the appeals or settlement officer in making the CDP determination. See Bowman v. Commissioner, T.C. Memo. 2007-114. * * * [Chief Counsel Notice CC-2009-010 (Feb. 13, 2009).]

The Chief Counsel's instructions also state: "The Form 4340 should be reviewed thoroughly and any issues raised by entries on the Form 4340, or inconsistencies with other documents, should be explained in the motion." Id.

We have recognized that Appeals officers are not required to rely on any particular document, such as a Form 4340, when making their determinations. See Craig v. Commissioner, 119 T.C. 252, 261-262 (2002); Nestor v. Commissioner, 118 T.C. 162, 166-167 (2002). However, a Form 4340 generated after the determination by the Office of Appeals can properly be offered in subsequent court proceedings to explain information used by the Appeals

officer.  See <u>Dinino v. Commissioner</u>, T.C. Memo. 2009-284; <u>Med. Practice Solutions, LLC v. Commissioner</u>, T.C. Memo. 2009-214.

On the basis of the record before us, we will deny respondent's motion for summary judgment and remand this case to the Appeals Office for further hearing.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.