T.C. Memo. 2016-38

UNITED STATES TAX COURT

HAMPTON SOFTWARE DEVELOPMENT, LLC, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 30231-13L.                           Filed March 3, 2016.

<u>Zachary K. Gregory</u>, for petitioner.

<u>G. Chad Barton</u>, for respondent.

MEMORANDUM OPINION

PARIS, <u>Judge</u>:  This case is before the Court on respondent's motion for

summary judgment filed under Rule 121.[1]  In a Notice of Determination

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code (Code) in effect at all relevant times, and all Rule references are to
the Tax Court Rules of Practice and Procedure.

[*2] Concerning Collection Action(s) Under Section 6320 and/or 6330, dated November 26, 2013, respondent determined to proceed with a proposed levy to collect petitioner's outstanding employment tax liabilities from Form 940, Employer's Annual Federal Unemployment Tax (FUTA) Return, for 2010 and Forms 941, Employer's Quarterly Federal Tax Return, for the quarterly periods ending June 30, September 30, and December 31, 2009; and March 31, June 30, September 30, and December 31, 2010 (notice of determination concerning collection action).

The issue is whether section 6330(c)(2)(B) precludes petitioner from challenging the underlying tax liabilities at its collection due process (CDP) hearing. The Court holds that it does not. Accordingly, the Court will deny respondent's motion for summary judgment.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

**[*3]**  Petitioner is an Oklahoma limited liability company whose members include Bill Hampton and Brent Hampton.[2]  Petitioner's principal office was in Oklahoma at the time the petition was filed.

I.  Petitioner's Classification of Maintenance Worker as an Independent Contractor

In 2009 and 2010 petitioner owned and operated an apartment complex in Tulsa, Oklahoma.  Mr. Herndon, d.b.a. Herndon Management, performed general maintenance work on the apartment complex in 2009 and 2010.[3]  Petitioner classified Mr. Herndon as an independent contractor for Federal tax purposes for 2009 and 2010.  Consequently, petitioner filed a Form 1099-MISC, Miscellaneous Income, on Mr. Herndon's behalf for 2010 to report payments it made to him as nonemployee compensation.  Although there is nothing in the record to indicate that petitioner filed a Form 1099-MISC on Mr. Herndon's behalf for 2009, petitioner has continuously maintained its position that it properly classified Mr. Herndon as an independent contractor for 2009 and thus had no obligation to pay employment taxes.

---

[2]It is unclear from the record whether Bill Hampton and Brent Hampton are petitioner's only members.

[3]Exhibits attached to the stipulation of facts indicate that petitioner contracted with Mr. Herndon, but the record does not include the contract itself.

**[*4]** II.  Respondent's Audit

Respondent audited petitioner's returns for 2009 and 2010 and on November 29, 2011, issued a Letter 950-D (30-day letter) to petitioner determining that Mr. Herndon should have been classified as an employee of petitioner and that payments made to Mr. Herndon during 2009 and 2010 were taxable wages. Consequently, respondent determined that petitioner was liable for employment taxes. The 30-day letter further explained that if petitioner disagreed with respondent's determination, it could request a conference with the Internal Revenue Service (IRS) Office of Appeals (IRS Appeals).

III.  September 13, 2012, Preassessment Conference With IRS Appeals

By letter dated December 28, 2011, petitioner protested the examination findings in the 30-day letter and requested a conference with IRS Appeals. In the protest letter petitioner argued that Mr. Herndon was an independent contractor, not its employee. Alternatively, petitioner argued that it was entitled to relief under the Revenue Act of 1978, Pub. L. No. 95-600, sec. 530(a), 92 Stat. at 2885, as amended (RA '78 sec. 530 relief).

Appeals Officer Stewart (AO Stewart) issued to petitioner a letter dated February 28, 2012, informing it that the appeal of the proposed employment tax liabilities had been assigned to him. Member Brent Hampton, acting on behalf of

[*5] petitioner, scheduled a conference for September 13, 2012, to discuss petitioner's protest with AO Stewart.

On September 13, 2012, AO Stewart held a telephone conference with Bill Hampton and Brent Hampton to discuss the examination findings. During the conference and over the course of the next few weeks the Hamptons and AO Stewart engaged in settlement discussions but ultimately did not reach an agreement.

IV.     Notice of Determination of Worker Classification

On October 23, 2012, respondent issued to petitioner via certified mail a Letter 3523, Notice of Determination of Worker Classification (NDWC), wherein respondent determined that under section 7436:  (1) Mr. Herndon was an employee of petitioner, not an independent contractor; (2) petitioner was not entitled to RA '78 sec. 530 relief; and (3) petitioner owed additional employment taxes and additions to tax for 2009 and 2010.

Among the attachments to respondent's motion for summary judgment is the envelope that respondent alleges contained the NDWC that was mailed to petitioner.  The face of the envelope shows a U.S. Postal Service label stamped "RETURNED TO SENDER" with the "UNCLAIMED" checkbox blackened in.

**[\*6]** Petitioner did not petition the Court for redetermination of Mr. Herndon's worker classification status. Petitioner alleges that it did not petition the Court because it did not receive the NDWC.

V.    Assessment

On April 8, 2013, respondent assessed petitioner's Form 940 liability for 2010 and Form 941 liabilities for the quarterly periods ending June 30, September 30, and December 31, 2009; and March 31, June 30, September 30, and December 31, 2010 (tax periods at issue).

VI.    Notice of Levy

On July 8, 2013, respondent issued to petitioner a CP 297A, Notice of Levy and Notice of Your Right to a Hearing,[4] with respect to the tax periods at issue. Respondent received petitioner's Form 12153, Request for a Collection Due Process or Equivalent Hearing (CDP request), on July 16, 2013. As an attachment to its CDP request petitioner included documentation to dispute the underlying employment tax liabilities that resulted from respondent's reclassification of Mr. Herndon from an independent contractor to an employee of petitioner. Alternatively, petitioner maintained that it was entitled to RA '78 sec. 530 relief.

---

[4]The Certificates of Assessment, Payments, and Other Specified Matters for the tax periods at issue indicate that a statutory notice of intent to levy was issued to petitioner on May 13, 2013. The record, however, does not include the notice.

[*7] VII.    <u>CDP Hearing</u>

On November 6, 2013, Settlement Officer Chambers (SO Chambers) held a CDP hearing with the Hamptons.  During the CDP hearing the only issue petitioner raised was doubt as to the underlying employment tax liabilities.  SO Chambers explained to the Hamptons that the underlying employment tax liabilities could not be raised as an issue during the CDP hearing because petitioner had already had an opportunity to dispute the underlying employment tax liabilities with IRS Appeals during its September 13, 2012, conference with AO Stewart.

On November 26, 2013, respondent issued to petitioner the notice of determination concerning collection action.  Petitioner timely filed a petition with the Court seeking review of its underlying employment tax liabilities for the tax periods at issue.  On April 13, 2015, respondent filed a motion for summary judgment.  On June 12, 2015, petitioner filed a response objecting to the granting of respondent's motion for summary judgment.

Discussion

The purpose of summary judgment is to expedite litigation and avoid unnecessary and expensive trials.  <u>Fla. Peach Corp. v. Commissioner</u>, 90 T.C. 678, 681 (1988).  The Court may grant summary judgment when there is no genuine

[*8] dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). The moving party bears the burden of proving that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Bond v. Commissioner, 100 T.C. 32, 36 (1993). In deciding whether to grant summary judgment, the facts and the inferences drawn from those facts must be considered in the light most favorable to the nonmoving party. Naftel v. Commissioner, 85 T.C. at 529. Where the moving party properly makes and supports a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of such party's pleading" but must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d).

## I.    Standard of Review

Where the amount of a taxpayer's underlying tax liability is properly at issue in a CDP case, the Court reviews the IRS' determination de novo. See Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). The Court reviews the IRS' determinations regarding nonliability issues for abuse of discretion. Hoyle v. Commissioner, 131 T.C. 197, 200 (2008); Goza v. Commissioner, 114 T.C. at 182. Abuse of discretion exists when a determination is arbitrary, capricious, or without

**[*9]** sound basis in fact or law. See <u>Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), <u>aff'd</u>, 469 F.3d 27 (1st Cir. 2006).

II.    <u>Petitioner's Challenge to the Underlying Tax Liabilities</u>

Section 6330(c) governs how a CDP hearing is conducted. At the CDP hearing the taxpayer may raise any relevant issue relating to the unpaid tax or the proposed levy, including appropriate spousal defenses, challenges to the appropriateness of collection actions, and offers of collection alternatives. Sec. 6330(c)(2)(A). In addition, section 6330(c)(2)(B) establishes the circumstances under which a person may challenge the existence or amount of the underlying liability. Section 6330(c)(2)(B) provides:

> SEC. 6330(c). Matters Considered at Hearing.--In the case of any hearing conducted under this section--
>
>     \*    \*    \*    \*    \*    \*    \*
>
> (2) Issues at hearing.--
>
>     \*    \*    \*    \*    \*    \*    \*
>
>     (B) Underlying liability.--The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

**[*10]** At petitioner's CDP hearing the Hamptons challenged the underlying employment tax liabilities that resulted from respondent's reclassifying Mr. Herndon as an employee but did not raise any other issues.

Respondent argues that he is entitled to summary judgment because petitioner was precluded from challenging the underlying liabilities at its CDP hearing and did not raise any other issues. Respondent asserts that petitioner was precluded from challenging the underlying liabilities because petitioner's September 13, 2012, preassessment conference with IRS Appeals constituted a prior "opportunity to dispute such tax liability" within the meaning of section 6330(c)(2)(B).

Petitioner asserts it never had an opportunity prior to the CDP hearing to dispute the underlying tax liabilities because it never received the NDWC, which would have provided it with the opportunity to petition the Court for review of respondent's determination. See sec. 7436(a).

**[*11]** A.     <u>Preassessment Conference With IRS Appeals</u>

The first issue is whether petitioner's September 13, 2012, conference with IRS Appeals constituted a prior "opportunity to dispute" the underlying tax liabilities under section 6330(c)(2)(B).[5]

For purposes of section 6330(c)(2)(B), the regulations make a distinction between taxes that are subject to deficiency procedures and taxes that are not subject to deficiency procedures.  <u>See</u> sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.  For taxes that are not subject to deficiency procedures, an "opportunity to dispute the underlying liability includes a prior opportunity for a conference with Appeals that was offered either before or after the assessment of the liability."  <u>Id.</u>; <u>see also</u> <u>Lewis v. Commissioner</u>, 128 T.C. 48 (2007) (upholding the validity of section 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.).

_____

[5]The Court has held that the "underlying tax liability" means the amounts that are the subject of the IRS' collection activities.  <u>Katz v. Commissioner</u>, 115 T.C. 329, 338-339 (2000); <u>see also</u> <u>Clues v. Commissioner</u>, T.C. Memo. 2015-209; <u>Arede v. Commissioner</u>, T.C. Memo. 2014-29.  Contesting respondent's determination that a worker is an employee or that a taxpayer is not entitled to RA '78 sec. 530 relief is a challenge to the amount that is the subject of the IRS' collection activities.  <u>See</u> <u>Tree-Tech, Inc. v. Commissioner</u>, T.C. Memo. 2011-162, 2011 WL 2709694, at *4 ("[the taxpayer] attempts to contest its underlying liability with regard to worker classification before this Court, asserting that it is eligible for section 530 relief.  Because * * * [the taxpayer] did not receive a notice of deficiency or otherwise have the opportunity to dispute its tax liability, it would generally be permitted to challenge its underlying liability as part of the * * * [CDP] hearing.").

**[\*12]** However, for taxes that are subject to deficiency procedures, an opportunity for a conference with IRS Appeals prior to the assessment of the tax is not a prior "opportunity to dispute" the underlying tax liability for purposes of section 6330(c)(2)(B). Sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs. Rather, for taxes subject to deficiency procedures "the relevant, pre-assessment 'prior opportunity' is the receipt of the notice of deficiency." T.D. 9291, 2006-2 C.B. 887, 891.[6] Thus, for taxes subject to deficiency procedures, receipt of the notice of deficiency triggers the taxpayer's preassessment prior opportunity to dispute the underlying liability. Where a taxpayer receives a notice of deficiency and does not timely petition the Court for redetermination, section 6330(c)(2)(B) bars the

---

[6]T.D. 9291, 2006-2 C.B. 887, in relevant part, includes comments regarding amendments that were made to sec. 301.6330-1, Proced. & Admin. Regs. These amendments became effective on November 16, 2006. The IRS amended sec. 301.6330-1, Proced. & Admin. Regs., by adding the following statement to paragraph (e)(3), A-E2: "An opportunity for a conference with Appeals prior to the assessment of a tax subject to deficiency procedures is not a prior opportunity for this purpose." The IRS explained:

> For taxes subject to deficiency procedures, the relevant, pre-assessment 'prior opportunity' is the receipt of the notice of deficiency. The offer of an Appeals conference prior to receipt of the notice of deficiency does not constitute an opportunity to dispute the liability under section 6330(c)(2)(B). This interpretation of section 6330(c)(2)(B) has been added to paragraph (e)(3) A-E2 to remove any uncertainty about this matter. * * * [T.D. 9291, 2006-2 C.B. at 890-891.]

**[\*13]** taxpayer from challenging the existence or amount of his tax liability in a CDP hearing. See Behling v. Commissioner, 118 T.C. 572, 576 (2002).

Accordingly, to determine whether petitioner's September 12, 2013, conference with IRS Appeals constituted a prior "opportunity to dispute" the underlying liability, the Court must determine whether an NDWC is subject to deficiency procedures.

Generally, an NDWC is subject to deficiency procedures. See sec. 7436(d)(1). Section 7436 governs proceedings for determinations of employment status. An NDWC is a formal "determination" of worker classification made pursuant to section 7436.

Pursuant to section 7436(d)(1), the principles of subsections (a), (b), (c), (d), and (f) of section 6213, section 6214(a), and section 6215, among other provisions, apply in the same manner as if an NDWC were a notice of deficiency. Sections 6213, 6214, and 6215 are all part of subtitle F, chapter 63, subchapter B of the Code. Subtitle F, chapter 63, subchapter B of the Code includes "Deficiency Procedures in the Case of Income, Estate, Gift, and Certain Excise Taxes". Thus, under section 7436(d)(1), an NDWC is generally subject to

**[\*14]** deficiency procedures.[7] See Lewis v. Commissioner, 128 T.C. at 55 ("For instance, with respect to the Commissioner's classification of individuals as employees for purposes of employment taxes, an employer is afforded a process akin to the deficiency procedures."); Central Motorplex, Inc. v. Commissioner,

---

[7]Sec. 7436(d)(1) broadly provides: "The principles of subsections (a), (b), (c), (d), and (f) of section 6213, section 6214(a), section 6215 * * * shall apply to proceedings brought under this section in the same manner as if the Secretary's determination * * * were a notice of deficiency." It is, however, a basic principle of statutory interpretation that where two statutes overlap in application, the more specific provision takes precedence over the more general provision. Bulova Watch Co. v. United States, 365 U.S. 753, 758 (1961); United States v. Porter, 745 F.3d 1035, 1049 (10th Cir. 2014); Wing v. Commissioner, 81 T.C. 17, 30 n.15A (1983). For example, sec. 7436(b)(2) specifically imposes a 90-day limit on filing a petition where the Commissioner sends notice of a determination by certified or registered mail but does not otherwise impose a 90-day limit. See SECC Corp. v. Commissioner, 142 T.C. 225, 239 (2014). One principle of sec. 6213(a)--applied through sec. 7436(d)(1)--is that a taxpayer has 90 (or 150) days after the notice of deficiency is mailed to file a petition. See id. In SECC Corp., the Court held that this principle of sec. 6213(a) would not cause the Court to lack jurisdiction if a petition is filed more than 90 days after a determination where the Commissioner did not exercise his right under sec. 7436(b)(2) to trigger the 90-day limitation period by sending notice by certified or registered mail. Id. In other words, the Court determined that sec. 7436(b)(2)--the specific provision--trumps sec. 7436(d)(1)--the broad provision. This is consistent with the Court's holding here that deficiency procedures generally apply through the broad incorporation by sec. 7436(d)(1) of the principles of many deficiency procedure provisions. If, however, a specific provision in sec. 7436 conflicts with generally applicable deficiency procedures that apply to worker classification determinations under sec. 7436(d)(1), the specific provision controls. See, e.g., SECC Corp. v. Commissioner, 142 T.C. 225.

**[\*15]** T.C. Memo. 2013-286 (applying the principles of section 6213(a) in the same manner as if an NDWC were a notice of deficiency).

Petitioner engaged in a telephone conference with IRS Appeals on September 13, 2012. Respondent alleges that the September 13, 2012, conference constituted a prior opportunity to dispute the underlying liability. Respondent issued to petitioner via certified mail an NDWC on October 23, 2012. Respondent assessed the tax periods at issue on April 8, 2013.

Because an NDWC is generally subject to deficiency procedures, a preassessment conference with IRS Appeals is not a prior opportunity to dispute the underlying liability; rather, receipt of the NDWC is the relevant, preassessment "prior opportunity" to dispute the underlying liability. See sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.; T.D. 9291, 2006-2 C.B. 887. Accordingly, petitioner's September 13, 2012, preassessment conference with IRS Appeals did not preclude it from challenging the underlying liability at its CDP hearing.

B.   Issuance of the Notice of Determination of Worker Classification

The second issue is whether respondent's issuance of the NDWC precludes petitioner from challenging the underlying liability at its CDP hearing under section 6330(c)(2)(B).

**[\*16]** Because an NDWC is generally subject to deficiency procedures, the principles referenced below apply in the same manner as if the NDWC were a notice of deficiency. See sec. 7436(d); Central Motorplex, Inc. v. Commissioner, T.C. Memo. 2013-286.

As discussed supra, for taxes subject to deficiency procedures receipt of the notice of deficiency (or NDWC) triggers the taxpayer's preassessment opportunity to dispute the underlying liability. Where a taxpayer receives a notice of deficiency (or NDWC) and does not timely petition the Court for redetermination, section 6330(c)(2)(B) bars the taxpayer from challenging the existence or amount of his tax liability in a CDP hearing. See Behling v. Commissioner, 118 T.C. at 576.

Petitioner contends it did not receive the NDWC and thus did not have a prior opportunity to dispute the underlying tax liability in court. Respondent argues that actual receipt is irrelevant.

Section 6330(c)(2)(B) requires actual receipt of the notice of deficiency by the taxpayer.[8] See sec. 301.6330-1(e)(3) Q&A-E2, Proced. & Admin. Regs.; see

---

[8]As the Court notes in Tatum v. Commissioner, T.C. Memo. 2003-115, 2003 WL 1918914, at \*3 n.4: "By contrast, for purposes of assessing a deficiency in tax, respondent is authorized to send a notice of deficiency to the taxpayer. For that purpose, mailing a notice of deficiency to the taxpayer at the taxpayer's last

(continued...)

[*17] also Kuykendall v. Commissioner, 129 T.C. 77, 80 (2007) ("Therefore, section 6330(c)(2)(B) contemplates actual receipt by the taxpayer."); Barnes v. Commissioner, T.C. Memo. 2010-30, 2010 WL 610674 (For purposes of determining whether a taxpayer may raise at a CDP hearing challenges to the existence or amount of the underlying liability, the taxpayer's receipt of a notice of deficiency, not the notice's mailing, is the relevant event); Tatum v. Commissioner, T.C. Memo. 2003-115, 2003 WL 1918914, at *3 ("It is therefore clear that section 6330(c)(2)(B) contemplates actual receipt of the notice of deficiency by the taxpayer."). A taxpayer cannot defeat actual receipt, however, by deliberately refusing delivery of a notice of deficiency. See Sego v. Commissioner, 114 T.C. 604, 611 (2000). A taxpayer who deliberately refuses delivery of a notice of deficiency is deemed to have received the notice. Id. Absent sufficient evidence that a taxpayer deliberately refused delivery of the notice of deficiency, proof that the notice of deficiency was not actually received will be sufficient to entitle a taxpayer to dispute the underlying liability in a section 6330 proceeding. Barnes v. Commissioner, 2010 WL 610674, at *4.

---

8(...continued)
known address is sufficient regardless of receipt or nonreceipt."

**[*18]** Respondent attached to his motion a copy of an envelope that respondent alleges contained the NDWC that was mailed to petitioner on October 23, 2012. The face of the envelope, however, shows a U.S. Postal Service label stamped "RETURNED TO SENDER" with the "UNCLAIMED" checkbox blackened in. Thus, there is no dispute that petitioner did not actually receive the NDWC. See, e.g., id. ("The face of the envelope shows that it was returned to respondent and was stamped unclaimed. Thus, there is no dispute that * * * [the taxpayer] did not actually receive the notice of deficiency."); Tatum v. Commissioner, 2003 WL 1918914, at *3 ("Here, the envelope with its contents, i.e., the notice of deficiency for 1990 and 1991, was returned unclaimed to respondent. Thus, there is no dispute that * * * [the taxpayers] did not actually receive the notice of deficiency.").

In his motion for summary judgment respondent does not argue that petitioner deliberately refused delivery of the notice. On the basis of the record, the Court cannot conclude that petitioner deliberately refused delivery of the NDWC. Thus, there is a genuine issue of material fact as to whether petitioner deliberately refused delivery of the NDWC. Accordingly, with respect to respondent's argument that section 6330(c)(2)(B) precluded petitioner from

[*19] challenging the underlying liability during its CDP hearing, the Court will

deny respondent's motion for summary judgment.

In reaching these holdings, we have considered all the parties' arguments,

and, to the extent not addressed herein, we conclude that they are moot, irrelevant,

or without merit.[9]

To reflect the foregoing,

An appropriate order will be issued.

---

[9]Even though sec. 6330(c)(2)(B) specifically addresses when a taxpayer may challenge the underlying liability at a CDP hearing, respondent also argues that sec. 6330(c)(4) precluded petitioner from challenging the underlying tax liability at its CDP hearing. By making this argument, respondent is essentially stating that the IRS' own regulations, sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs., addressing what constitutes a "prior opportunity" to dispute the underlying liability under sec. 6330(c)(2)(B) are irrelevant. As discussed supra, sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs., specifically provides that a preassessment conference with IRS Appeals does not constitute a prior opportunity to dispute the underlying liability for taxes subject to deficiency procedures. The Court has already upheld the validity of this regulation in Lewis v. Commissioner, 128 T.C. 48 (2007). In addition, in Lewis the Court made specific reference to an NDWC, noting that an employer who receives an NDWC is afforded a process akin to deficiency procedures, meaning that an NDWC serves as a "ticket" to the Court. See id. at 55. For purposes of sec. 6330(c)(2)(B) the taxpayer must actually receive the NDWC to have an opportunity to petition the Court. This is an issue that the Court has addressed supra. For this reason, respondent's argument that sec. 6330(c)(4) precluded petitioner from challenging the underlying liability because petitioner participated in a preassessment conference with IRS Appeals is without merit.