T.C. Memo. 2021-13

UNITED STATES TAX COURT

BM CONSTRUCTION, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24352-17L.                    Filed February 8, 2021.

Marius Bernotas (an officer), for petitioner.

<u>Daniel James White</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

URDA, <u>Judge</u>:  In this collection due process (CDP) case petitioner, BM

Construction (Construction), seeks review pursuant to section 6330(d)(1)[1] of the

_____

[1]All section references are to the Internal Revenue Code in effect at all
relevant times, and all Rule references are to the Tax Court Rules of Practice and
Procedure.  We round all monetary amounts to the nearest dollar.

[*2] determination of the Internal Revenue Service (IRS) Office of Appeals to uphold a notice of intent to levy to collect a 2012 liability for backup withholding (sometimes referred to herein as BUW), additions to tax, and associated interest. This case presents two primary issues: (1) whether Construction received a Letter 950-D with respect to the 2012 backup withholding tax liability[2] and (2) whether the settlement officer abused his discretion in sustaining the notice of intent to levy. We resolve both issues in respondent's favor.

FINDINGS OF FACT

This case was tried in Detroit, Michigan. We draw the following facts from the parties' stipulation, the exhibits attached thereto, and the exhibits and testimony presented at trial. Construction's principal place of business was in Milford, Michigan, when it timely filed its petition.

A.    2012 Liabilities and IRS Examination

In February 2014 the IRS began an examination into the 2012 tax liabilities of Marius Bernotas and his sole proprietorship, Construction. The IRS examination officer started with Mr. Bernotas' 2012 Federal income tax return and

---

[2]Sec. 3406 requires a payor to deduct and withhold tax from certain payments not otherwise subject to withholding if the payee taxpayer fails to cooperate with the information reporting scheme (e.g., failure to furnish his taxpayer identification number to the payor).

**[\*3]** then expanded her inquiry to include Construction's backup withholding tax obligations and potential penalties. At the end of each day that she worked on this matter, the examination officer made entries in an activity log, in which she noted the "file" (i.e., income tax, backup withholding tax, or penalties), any actions taken, and time spent.

1.    Initial Communications

On May 7, 2014, the examination officer sent to Mr. Bernotas a report on penalties for Construction's failure to issue IRS Forms 1099-MISC, Miscellaneous Income, to certain subcontractors. Shortly thereafter Mr. Bernotas requested a meeting to discuss this issue, which was scheduled for June 17, 2014. On June 6, 2014, the examination officer issued to Mr. Bernotas a Letter 950-D (commonly known as a 30-day letter) with respect to the income tax file, giving Mr. Bernotas 30 days to request a conference with the Office of Appeals on the income tax issue.

On June 13, 2014, the examination officer prepared a second Letter 950-D (BUW 30-day letter), proposing adjustments to Construction's 2012 backup withholding tax liability because of its failure to timely obtain the tax identification numbers for certain subcontractors. The BUW 30-day letter apprised Construction of its right to request an Appeals conference by submitting

[*4] a formal protest within 30 days (i.e., by July 13, 2014). It was addressed to Mr. Bernotas at Construction's Milford, Michigan, address.

The examination officer's activity log reflects that, on June 13, 2014, she received managerial approval and mailed the BUW 30-day letter, along with a copy of IRS Publication 3498, The Examination Process, and workpapers explaining the proposed adjustments. The examination officer's general practice was to meter and mail such a package herself and to make a notation on her activity log if the mail was returned later. Her activity log for this case does not reflect the return of any mail. We find that the letter and the supporting documentation were so mailed and were not returned.

2.    Talks Continue

The examination officer met with Mr. Bernotas and his wife as planned on June 17, 2014. Two more IRS employees joined: an employment tax specialist and a revenue agent who spoke Russian and translated for Mr. Bernotas' benefit.

Although the parties had scheduled the meeting to discuss the proposed penalties against Construction (and the meeting was coded consistently), the parties discussed the Bernotases' income tax issue and Construction's backup withholding issue as well. The parties discussed the intertwined penalty and backup withholding issues at some length, with the employment tax specialist

**[*5]** taking the position that Construction had failed either to issue Forms 1099 or to withhold tax for certain subcontractors.

At the end of the meeting the examination officer believed that the only dispute between the parties related to the Bernotases' income tax. After the Bernotases declined a meeting with the examination officer's manager, the parties scheduled a followup meeting on that issue for June 30, 2014. The examination officer then closed Construction's penalty file and made adjustments to the penalty and BUW computations on the basis of the parties' discussions.

The meeting of June 30, 2014, did not prove productive. Again, an IRS employee fluent in Russian translated for Mr. Bernotas. Despite the apparent progress during the previous meeting, Mr. Bernotas returned to the penalty and BUW issues, requesting the opportunity to submit a Form 4669, Statement of Payments Received, from one of Construction's subcontractors. The examination officer ultimately agreed to remove amounts associated with this subcontractor from the penalty and BUW computations if Mr. Bernotas returned the form, noting that the "30 days letter expires for BUW file 7/13/14". After explaining to Mr. Bernotas his appeal rights and inquiring whether he wanted a meeting with her manager, the examination officer emphasized that Mr. Bernotas had "until 30 day

[*6] letters expire to get a protest to * * * [the examination officer] since case is not in agreement or case will close unagreed."

On July 14, 2014, one day after the deadline set forth in the BUW 30-day letter had expired, the examination officer began discussions with a certified public accountant (C.P.A.) retained by Mr. Bernotas. The examination officer advised her of the status of the backup withholding and income tax files, and the C.P.A. indicated disagreement with the examination officer's positions and adjustments. The examination officer informed her that the case would close on July 23, 2014, unless a protest was received.

Mr. Bernotas thereafter submitted on Construction's behalf the Form 4669 discussed during the meeting of June 30, 2014, and the examination officer adjusted her backup withholding computations accordingly. On July 23, 2014, having received no formal protest from Mr. Bernotas regarding the BUW 30-day letter, the examination officer closed the backup withholding tax file. The IRS thereafter assessed against Construction a backup withholding tax for 2012 of $31,322 and additions to tax under section 6651(a)(1) and (2) of $9,710 and $3,602, respectively, along with associated interest. It mailed a billing summary reflecting these assessments to Construction at its Milford, Michigan, address.

[*7] B.    Collection Activities and CDP Hearing

In an effort to collect the backup withholding tax liability, the IRS issued to Construction a Notice of Intent to Levy and Notice of Your Right to a Hearing. In response, Construction submitted to the IRS a timely Form 12153, Request for a Collection Due Process or Equivalent Hearing. On that form Construction indicated that it wished to dispute the underlying backup withholding tax liability and additions to tax.

The case was subsequently assigned to a settlement officer in the Office of Appeals who noted that the examination materials included in the file reflected the mailing of the BUW 30-day letter to the same address reported in Construction's Form 12153 and that no protest had been submitted. He thereafter sent a letter scheduling the CDP hearing, informing Construction that it was not entitled to dispute its underlying liability for 2012 because it had been afforded a prior opportunity to do so by virtue of the BUW 30-day letter.

The CDP hearing was subsequently held between the settlement officer and the C.P.A. During the hearing the C.P.A. attempted to dispute Construction's underlying liability. The settlement officer reiterated that his review of the backup withholding tax file showed that Construction received a BUW 30-day letter and was therefore precluded from challenging its underlying liability.

**[\*8]**   The Office of Appeals thereafter issued to Construction at the Milford,

Michigan, address a notice of determination sustaining the levy notice.  The notice

reflected the settlement officer's conclusion that all legal and procedural

requirements had been met, that Construction was precluded from contesting its

underlying liability, and that it had offered no alternatives to collection.  It further

observed that the proposed levy action appropriately balanced efficient tax

collection with Construction's interest in ensuring that the collection action was

minimally intrusive.

OPINION

I.      Preliminary Matters

        A.      Jurisdiction

        Before turning to the substantive issues, we must clarify a jurisdictional

point.  The record establishes that the notice of determination was issued to

Construction, a sole proprietorship, rather than to Mr. Bernotas, its owner.  A sole

proprietorship is generally disregarded as a separate entity from its owner for

Federal tax purposes, sec. 301.7701-2(a), (c)(2)(i), Proced. & Admin. Regs.,

**[\*9]** raising the question whether the notice here was valid,[3] see Scott Labor, LLC v. Commissioner, T.C. Memo. 2015-194, at \*19.

Although we have not previously addressed this question with respect to sole proprietorships, we have done so regarding single-member LLCs disregarded for Federal tax purposes. We have explained that such LLCs and their members "are a single taxpayer * * * to whom notice is given", Med. Practice Sols, LLC v. Commissioner, 132 T.C. 125, 127 (2009), aff'd without published opinion sub nom. Britton v. Shulman, 2010 WL 3565790 (1st Cir. 2010), and that the issuance of a notice of determination to a disregarded LLC was a "harmless error" where, inter alia, the member was adequately notified of the liabilities, Bergdale v. Commissioner, T.C. Memo. 2014-152, at \*6-\*7, or was not prejudiced by the IRS' failure to treat the LLC as disregarded, Scott Labor, LLC v. Commissioner, at \*20-\*21.

Given that a sole proprietorship is an entity "in which a single individual owns all the assets, is liable for all debts, and operates in an individual capacity",

---

[3]Sec. 301.7701-2(c)(2)(i), Proced. & Admin. Regs., provides: "Except as otherwise provided in this paragraph (c), a business entity that has a single owner and is not a corporation under paragraph (b) of this section is disregarded as an entity separate from its owner." Although this rule generally does not apply for employment tax purposes, id. subdiv. (iv)(A), it does explicitly apply for backup withholding tax purposes under sec. 3406, id. subdiv. (iv)(C).

**[\*10]** <u>Littriello v. United States</u>, 484 F.3d 372, 375 (6th Cir. 2007), we hold that the same rule obtains, <u>see</u> <u>Scott Labor, LLC v. Commissioner</u>, at \*21 n.8 ("[T]he identity of the named petitioner in a case involving a disregarded entity is of no consequence and does not raise any jurisdictional (or proper caption) issues."). As Mr. Bernotas was adequately notified of the liability (and we perceive no prejudice), we may exercise jurisdiction to review the Office of Appeals' determination pursuant to section 6330(d)(1).

B.     <u>Standard of Review</u>

Where the validity of the underlying tax liability is properly at issue, we review the determination regarding the underlying tax liability de novo. <u>Sego v. Commissioner</u>, 114 T.C. 604, 610 (2000); <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000). We review all other determinations for abuse of discretion. <u>Sego v. Commissioner</u>, 114 T.C. at 610; <u>Goza v. Commissioner</u>, 114 T.C. at 182. In reviewing for abuse of discretion, we must uphold the Office of Appeals' determination unless it is arbitrary, capricious, or without sound basis in fact or law. <u>See, e.g.</u>, <u>Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), <u>aff'd</u>, 469 F.3d 27 (1st Cir. 2006); <u>Taylor v. Commissioner</u>, T.C. Memo. 2009-27, 2009 WL 275721, at \*9.

[*11] II.     Underlying Liability

A taxpayer may challenge the existence or amount of its underlying liability in a CDP proceeding only if it "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." Sec. 6330(c)(2)(B); see also Bell v. Commissioner, 126 T.C. 356, 358 (2006). For this purpose, the phrase "underlying tax liability" includes the backup withholding tax, any penalties and additions to tax, and statutory interest. See Katz v. Commissioner, 115 T.C. 329, 339 (2000).

As to whether a taxpayer had an opportunity to dispute its liability, the regulations distinguish between liabilities "that are subject to deficiency procedures and * * * [those] that are not subject to deficiency procedures." Hampton Software Dev., LLC v. Commissioner, T.C. Memo. 2016-38, at *11. Employment tax liabilities, such as the backup withholding tax in question, are not subject to deficiency procedures. See Romano-Murphy v. Commissioner, 152 T.C. 278, 292 (2019); see also Durda v. Commissioner, T.C. Memo. 2017-89, at *6-*7. With respect to such liabilities, section 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs., provides: "An opportunity to dispute the underlying liability includes a prior opportunity for a conference with Appeals that was offered either before or after the assessment of the liability."

**[\*12]** As relevant here, we have held that the receipt of a Letter 950-D provides a taxpayer with a prior opportunity for a conference with the Office of Appeals of the sort described in the regulations. See Patrick's Payroll Servs., Inc. v. Commissioner, T.C. Memo. 2020-47, at \*11-\*13. Whether Construction was precluded from contesting its underlying liabilities during the CDP hearing thus hinges upon its receipt of the BUW 30-day letter, which provided it with such an opportunity. In Kuykendall v. Commissioner, 129 T.C. 77, 80 (2007), we explained that in the context of a notice of deficiency, "section 6330(c)(2)(B) contemplates actual receipt by the taxpayer". The same holds true here.

The mailing of a properly addressed letter creates a "presumption that it reached its destination and was actually received by the person to whom it was addressed", which a taxpayer must rebut with "credible" evidence. Rivas v. Commissioner, T.C. Memo. 2017-56, at \*20. The act of mailing, in turn, "may be proven by documentary evidence of mailing or by evidence of the Commissioner's mailing practices corroborated by direct testimony." Campbell v. Commissioner, T.C. Memo. 2013-57, at \*10. The Court's determination of whether a taxpayer properly received a letter that would preclude a challenge to the underlying liability under section 6330(c)(2)(B) is made on the preponderance of the

[*13] evidence.  See Rivas v. Commissioner, at *21; see also Sego v.

Commissioner, 114 T.C. at 611.

We conclude that respondent has met his burden to show mailing of the

BUW 30-day letter by competent and persuasive evidence.  At trial respondent

introduced a copy of the BUW 30-day letter sent to Mr. Bernotas, the examination

officer's activity log, and the testimony of the examination officer regarding her

general practices when mailing such communications.

As an initial matter, the BUW 30-day letter was properly addressed to Mr.

Bernotas at the Milford, Michigan, address that he used throughout the initial

examination, during the CDP proceedings, and in this Court.  In the stipulation

and also at trial, Mr. Bernotas acknowledged receipt of several pieces of

correspondence from the examination officer at this address.  And the examination

officer's activity log did not record that the mail was returned for any reason.

We also find persuasive the testimony of the examination officer as to her

mailing practices.  Unlike the case of a notice of deficiency, see sec. 6212(a), a

30-day letter is not required to be sent by certified mail, so we do not have the

benefit of a certified mailing log, see Internal Revenue Manual pt. 4.23.10.8(9)

(May 7, 2013).  The examination officer nonetheless credibly testified that her

**[\*14]** practice when sending out a 30-day letter was to "take it to the mailroom

* * *.  Put it on the scale.  Weigh it.  Send it out."

The detailed activity log kept by the examination officer suggests that is precisely what happened here.  We credit the examination officer's testimony that her practice was to record at the end of each day her work that day, categorized by file, activity, and time spent.  On June 13, 2014, she recorded "Manager signed off on 30 day letter and LS 300.  RA worked on 945 file and sent 30 day to TP with LS500, workpaper, pub 3498."  This entry suggests that, after mailing the BUW 30-day letter, the examination officer reported as much in her notes before ending her workday.

The activity log entry for June 30, 2014, further bolsters our conclusion. The June 30 entry reflects that the examination officer referenced the BUW 30-day letter when establishing due dates for certain documentation and for the protests. Although Mr. Bernotas testified that he did not remember discussing the BUW 30-day letter at that time, we find the activity log entry more persuasive on this point, given that it was prepared contemporaneously.

Construction counters that several perceived inconsistencies in the activity log suggest that the BUW 30-day letter had not been mailed.  Specifically, Construction points out that the parties had a conference long scheduled for

[*15] June 17, 2014, and that it defied reason to think the examination officer would issue the BUW 30-day letter before that conference. The activity log entry for May 19, 2014, however, indicates that the June 17 meeting was scheduled to discuss the penalty issue, a point confirmed by the file classification code associated with that meeting on the log. A meeting scheduled to discuss penalties would provide no reason to delay issuance of the BUW 30-day letter.

Construction also asserts that the parties' discussions and computational adjustments after June 13, 2014, belied the issuance of a BUW 30-day letter, given the examination officer's trial testimony that such a letter is issued where an agreement has been ruled out. The course of conduct between the parties with respect to the other tax issues undercuts Construction's argument. Despite issuing a 30-day letter with respect to the income tax issue and a report on the penalty issue, the examination officer nonetheless continued to have discussions with Construction and make adjustments with respect to both issues (even reaching an agreement as to penalties). Continuing conversations and adjustments thus do not demonstrate a failure to mail the BUW 30-day letter.[4]

---

[4]We note for clarity's sake that Construction has not argued at any point either in the Office of Appeals or before this Court that it made a formal or informal request for a conference with the Office of Appeals regarding the backup withholding issue.

**[\*16]** The evidence persuades us that the examination officer properly mailed the BUW 30-day letter. Respondent accordingly may rely on the mailing to establish actual receipt by Mr. Bernotas unless Mr. Bernotas offers credible rebutting evidence. See Rivas v. Commissioner, at \*20.

As we have noted in a similar context, a "taxpayer's self-serving claim that he did not receive the notice of deficiency will generally be insufficient to rebut the presumption." Klingenberg v. Commissioner, T.C. Memo. 2012-292, at \*12, aff'd, 670 F. App'x 510 (9th Cir. 2016). Construction offers only Mr. Bernotas' uncorroborated testimony that Construction never received the BUW 30-day letter and the C.P.A.'s testimony that Mr. Bernotas did not give her such a letter. Standing alone, this testimony fails to persuade us that Construction did not receive the BUW 30-day letter, which was properly addressed to Mr. Bernotas and never returned to the examination officer. The record before us shows that the parties engaged in repeated conversations about the backup withholding tax, appeal rights, and related issues after the issuance of the BUW 30-day letter, and it beggars belief that Mr. Bernotas and the C.P.A. would not raise a question at the time if the letter had not been received.

To sum up, we find that the examination officer mailed the BUW 30-day letter to Construction on June 13, 2014, and that Construction subsequently

[*17] received that letter. Consequently, Construction had a prior opportunity to dispute the underlying liability for 2012 that precluded it from later contesting the liability during the CDP hearing (or in this Court). See Patrick's Payroll Servs., Inc. v. Commissioner, at *11-*13; see also sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.

III.    Abuse of Discretion

We next consider whether the settlement officer: (1) properly verified that the requirements of any applicable law or administrative procedure have been met; (2) considered any relevant issues which Construction raised; and (3) considered whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [Construction] that any collection action be no more intrusive than necessary." Sec. 6330(c)(3). Our review of the record establishes that the settlement officer did not abuse his discretion in satisfying the requirements set forth in section 6330(c).

A.    Verification

As an initial matter, this Court has authority to review satisfaction of the verification requirement regardless of whether the taxpayer raised that issue at the CDP hearing. See Hoyle v. Commissioner, 131 T.C. 197, 201-203 (2008), supplemented by 136 T.C. 463 (2011). Construction has not raised a verification

[*18] challenge. But even if it had, we conclude, from our review of the record, that the settlement officer conducted a thorough review of Construction's administrative file and did not abuse his discretion in concluding that all applicable legal and procedural requirements were met with respect to the proposed levy action.[5]

### B.     Issues Raised

Construction did not raise any issues at the CDP hearing beyond the underlying liability, nor did it pursue any collection alternatives. We accordingly conclude that the settlement officer necessarily did not abuse his discretion in fulfilling his obligation under section 6330(c)(3)(B) to consider any "issues raised" by Construction during the hearing.

### C.     Balancing Analysis

Construction has not argued at any stage that the settlement officer failed to consider "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any

----

[5]In the context of a settlement officer's verification under sec. 6330(c), we have held that "[w]here the supervisory approval requirement of section 6751(b)(1) applies, the * * * [settlement] officer should obtain verification that such approval was obtained". ATL & Sons Holdings, Inc. v. Commissioner, 152 T.C. 138, 144 (2019). The approval requirement of sec. 6751(b)(1), however, does not apply to additions to tax under sec. 6651(a)(1) and (2) at issue in this case. See sec. 6751(b)(2)(A).

[*19] collection action be no more intrusive than necessary." <u>See</u> sec. 6330(c)(3)(C). The issue is thus deemed conceded. <u>See</u> Rule 331(b)(4); <u>see also</u> <u>Ansley v. Commissioner</u>, T.C. Memo. 2019-46, at *19. In any event, we see no abuse of discretion in the settlement officer's balancing analysis, particularly in view of the fact that Construction raised no issues at the hearing beyond its underlying liability and pursued no collection alternatives.

IV.   <u>Conclusion</u>

We accordingly conclude that Construction was precluded from challenging its underlying liability during the CDP hearing (and subsequently in this Court), and further conclude that the Office of Appeals did not abuse its discretion in sustaining the proposed levy action.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.