In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1279

OUR COUNTRY HOME ENTERPRISES, INC.,

*Petitioner-Appellant*,

*v.*

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee*.

Appeal from the United States Tax Court.
No. 7688–14 L — **Lewis R. Carluzzo**, *Special Trial Judge*.

ARGUED NOVEMBER 9, 2016 — DECIDED MAY 3, 2017

Before BAUER and KANNE, *Circuit Judges*, and FEINERMAN, *District Judge*.*

KANNE, *Circuit Judge*. This case presents an issue of first impression in our circuit—one that requires us to delve into the abstruse world of federal-tax procedure. In this appeal, we address whether Our Country Home Enterprises, Inc.

---

* The Honorable Gary Feinerman, of the United States District Court for the Northern District of Illinois, sitting by designation.

may challenge its liability for a tax penalty in a Collection Due Process ("CDP") hearing after having unsuccessfully challenged its liability for that penalty in an administrative hearing before the IRS Office of Appeals. The tax court determined that the earlier liability challenge precluded the later one. Our Country Home appealed. We affirm.

## I.   BACKGROUND

This appeal concerns the matters a taxpayer can raise in a CDP hearing. For the reader's benefit, we provide a brief overview of what CDP hearings are, why they exist, and how they fit within the enigmatic mishmash that is the Internal Revenue Code. We then address the issues before us.

### A.  Overview of the CDP Process

Congress has given the Secretary of Treasury the power "to determine, assess, and collect federal taxes." *Gyorgy v. Comm'r*, 779 F.3d 466, 472 (7th Cir. 2015) (citing I.R.C. §§ 6201(a), 6301). The Secretary, in turn, has delegated that power to the Commissioner of Internal Revenue, who has further delegated that power to local IRS officials. *Hughes v. United States*, 953 F.2d 531, 536 (9th Cir. 1992). IRS officials review taxpayers' tax returns. *BASR P'ship v. United States*, 795 F.3d 1338, 1339 (Fed. Cir. 2015). In these returns, taxpayers must report the income they earn each year. *Lain v. Comm'r*, 103 T.C.M. (CCH) 1546, *2 (2012).

If a taxpayer understates his income and additional tax is due, the IRS may propose a deficiency. Michael I. Saltzman & Leslie Book, IRS Prac. & Proc. ¶ 10.03 (2016). A deficiency "is the amount of tax imposed less any amount that may have been reported by the taxpayer on his return." *Laing v. United States*, 423 U.S. 161, 173 (1976) (citing I.R.C. § 6211(a)).

A deficiency does not have the force of a judgment; rather, it constitutes the IRS's provisional determination of how much additional tax a taxpayer owes. IRS Prac. & Proc. ¶ 10.01[1]. Before the IRS can collect a deficiency, it must issue a notice to the taxpayer. *Murray v. Comm'r*, 24 F.3d 901, 903 (7th Cir. 1994). This notice gives the taxpayer the right to challenge the deficiency in tax court. *Id.*

"The Tax Court is an Article I court created by Congress with limited jurisdiction to rule on deficiencies assessed by the government on taxpayers." *Crawford v. Comm'r*, 266 F.3d 1120, 1121–22 (9th Cir. 2001). Congress created the tax court as an avenue for prepayment judicial review of tax deficiencies. *Flora v. United States*, 362 U.S. 145, 158 (1960). Without this forum, the only way a taxpayer could challenge a deficiency judicially would be to pay the tax and sue for a refund in federal court. *Bartman v. Comm'r*, 446 F.3d 785, 787 (8th Cir. 2006); I.R.C. § 7422(a). In some cases, however, a deficiency might be so costly that a taxpayer cannot pay it. Under these circumstances, the taxpayer would not be able to initiate a refund suit, and the IRS would be insulated from judicial review. *Flora*, 362 U.S. at 158–59. To alleviate this problem, Congress enacted §§ 6212 and 6213. These sections prohibit the IRS from assessing a deficiency in income, estate, gift, and certain excise taxes until the IRS issues a notice of deficiency, giving the taxpayer access to tax court. *Murray*, 24 F.3d at 903.

A taxpayer has 90 days (or 150 days if he lives outside the United States) to petition for review in tax court. I.R.C. § 6213(a). So long as the taxpayer makes a timely petition, the court can review the deficiency and decide whether to modify or reject it. IRS Prac. & Proc. ¶ 10.01[1].

If the taxpayer does not timely file a petition, the IRS can assess the deficiency. *Id*. at ¶ 10.01[2][b]. An assessment is the formal recording of a taxpayer's tax liability. *See* I.R.C. § 6203. "The assessment is given the force of a judgment," authorizing the IRS to collect the tax. *Bull v. United States*, 295 U.S. 247, 260 (1935); *see Matter of Carlson*, 580 F.2d 1365, 1368 (10th Cir. 1978).

Some taxes are not considered deficiencies under the Internal Revenue Code. For instance, penalties for failing to file a tax return or for outright failing to pay taxes due are not deficiencies. *See* I.R.C. § 6651(a)(1)–(2); Internal Revenue Manual at 8.17.7.1.1. Nor are reporting penalties imposed for failing to report participation in various tax-shelter transactions. *See* I.R.C. § 6707A; *Smith v. Comm'r*, 133 T.C. 424, 428–29 (2009). For these nondeficiency taxes—which are not subject to deficiency procedures like prepayment judicial review in tax court—the IRS can make an immediate assessment. *See Smith*, 133 T.C. at 428–29; Internal Revenue Manual at 8.17.7.1.1; 8.17.4.17.

Within 60 days of an assessment, the IRS must notify the taxpayer of the amount due and demand payment. I.R.C. § 6303(a). If the taxpayer fails to pay what is due on time, the IRS can file a notice of federal tax lien, which places a lien on all of the taxpayer's property. I.R.C. § 6321. The IRS then can collect delinquent taxes through either judicial or administrative means. For instance, the IRS can file a civil action in federal district court to foreclose on a tax lien. I.R.C. § 7403. Alternatively, the IRS can take administrative action by levying on a taxpayer's property. I.R.C. § 6331. To collect through an administrative levy, the IRS must give the taxpayer 30 days' prior notice. I.R.C. § 6331(d)(1)–(2).

Before 1998, "the IRS could reach a delinquent taxpayer's assets by lien or levy without providing any sort of pre-attachment process." *Dalton v. Comm'r*, 682 F.3d 149, 154 (1st Cir. 2012). Moreover, IRS officers could take these actions without any judicial oversight. *See* James K. Wilkens and Thomas A. Matthews, *A Survey of Federal Tax Collection Procedure: Rights and Remedies of Taxpayers and Internal Revenue Service*, 3 Alaska L. Rev. 269, 269–70 (1986). Congress determined that the IRS had gone too far in its collection activities. So Congress enacted the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105–206, 112 Stat. 685, designed to provide taxpayers with additional procedural safeguards to oppose IRS collection efforts. *Kindred v. Comm'r*, 454 F.3d 688, 695 (7th Cir. 2006). Specifically, Congress enacted §§ 6320 and 6330, which grant a taxpayer the right to a CDP hearing after the IRS issues a notice of federal tax lien (§ 6320) or before the IRS levies on the taxpayer's property (§ 6330).

Officers in the IRS Office of Appeals conduct these CDP hearings. *Gyorgy*, 779 F.3d at 472; I.R.C. § 6320(b)(1). The Appeals Office is an independent bureau of the IRS charged with impartially resolving disputes between the government and taxpayers. *See Gyorgy*, 779 F.3d at 472. Although the appeals officer reviewing the case represents the IRS, he must have had no prior involvement with the taxpayer regarding the tax at issue. *Tucker v. Comm'r*, 676 F.3d 1129, 1131 (D.C. Cir. 2012). The officer also must verify that the IRS has satisfied all legal and administrative requirements with respect to the tax. I.R.C. § 6330(c)(1).

At the hearing, a taxpayer may raise "any relevant issue relating to the unpaid tax or the proposed levy," including

collection alternatives and challenges to the proposed collection action. I.R.C. § 6330(c)(2)(A). He may not, however, raise an issue if "the issue was raised and considered at a … previous administrative or judicial proceeding" and he "participated meaningfully" in that proceeding. I.R.C. § 6330(c)(4)(A).

Moreover, a taxpayer may contest his liability for the tax, but only if he "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." I.R.C. § 6330(c)(2)(B). The Treasury Regulations note that "[a]n opportunity to dispute the underlying liability includes a prior opportunity for a conference with [the] Appeals [Office] that was offered either before or after the assessment of the liability." Treas. Reg. § 301.6330–1(e)(3) Q&A–E2. The regulations further note, however, that "[a]n opportunity for a conference with [the] Appeals [Office] prior to the assessment of a tax subject to deficiency procedures is not a prior opportunity for this purpose." *Id*.

Although CDP hearings provide taxpayers with additional procedural safeguards, calling the proceeding a "hearing" is somewhat misleading in that "there is no obligation to conduct a face-to-face hearing, no formal discovery, no requirement for either testimony or cross-examination, and no transcript." *Dalton*, 682 F.3d at 155. Moreover, a taxpayer has no right to subpoena documents or witnesses. *Konkel v. Comm'r*, No. 6:99-CV-1026-ORL-31C, 2000 WL 1819417, at *4 (M.D. Fla. Nov. 6, 2000). And a CDP hearing need not include every party in interest. *Dalton*, 682 F.3d at 155. Indeed, far from constituting a formal hearing, a CDP hearing provides a taxpayer with nothing more than an opportunity for

an informal oral or written conversation with the IRS before he must pay a tax. *Id.*

Despite these procedural shortcomings, one of the better aspects of the CDP process is the opportunity for prepayment judicial review in tax court following the administrative hearing in the Appeals Office. Under § 6330(d)(1), a taxpayer who disagrees with the Appeals Office's decision can appeal that decision to the tax court. *See Gyorgy*, 779 F.3d at 472. And when the issue involves liability for the penalty, the tax court reviews the Appeals Office's determination *de novo*. *Id*. That said, the tax court's review is limited to the issues raised in the CDP hearing. *Goza v. Comm'r*, 114 T.C. 176, 182–83 (2000). This means that, because a taxpayer cannot raise liability challenges precluded by § 6330(c)(2)(B) and issues precluded by § 6330(c)(4)(A) in a CDP hearing, the taxpayer cannot present them to the tax court in its review of the Appeals Office's decision. *Keller Tank Servs. II, Inc. v. Comm'r*, No. 16-9001, 2017 WL 1424973, at *7 (10th Cir. Apr. 20, 2017).

Moreover, the tax court usually affirms the Appeals Office's decisions. *See* IRS Prac. & Proc. ¶ 14B.09[2] (noting that there is a "high rate of sustention of the Appeals employee's determination when the case is heard in Tax Court"). So a taxpayer's best chance for success lies with the appeals officer conducting the CDP hearing, not with the tax court. *Id*.

With this background in hand, we turn to the issues before us.

### B. *Issues Presented*

From 2003 through 2007, Our Country Home participated in an employee-benefit plan called the Sterling Plan.

Thomas Blake was the only Our Country Home employee enrolled in this plan. Although the company took deductions on its tax returns for its payments into the plan, Blake claimed no income from the plan on his returns.

The IRS proposed a § 6707A reporting penalty for Our Country Home's failure to report its participation in this plan on its 2007 tax returns. The IRS also proposed deficiency penalties against Our Country Home, claiming that the company's deductions for its payments into the plan were improper; these penalties included a § 6662(a) penalty (which is assessed when a taxpayer makes a substantial understatement and acts with negligence or disregard of the rules or regulations) and a § 6662A penalty (which is assessed when a taxpayer makes an understatement related to a reportable transaction that was disclosed inadequately). Two contemporaneous proceedings followed, one concerning the reporting penalty and the other concerning the deficiency penalties. This appeal concerns the reporting-penalty proceeding and Our Country Home's attempts to challenge its liability for the § 6707A penalty.

Taxpayers incur § 6707A penalties by failing to report participation in certain abusive tax-shelter transactions. *Smith*, 133 T.C. at 427. Because these are reporting penalties, they do not depend on a tax deficiency; indeed, the IRS will impose these penalties even in cases involving an overpayment of tax. *Id*. at 429.

Section 6707A covers two different kinds of transactions: "reportable" transactions, which are those "having a potential for tax avoidance or evasion"; and "listed" transactions, which are reportable transactions that are the same as or substantially similar to those that the Secretary of Treasury

has specifically identified as tax-avoidance transactions. I.R.C. § 6707A(c)(1)–(2). The IRS determined that participation in the Sterling Plan constituted a listed transaction because it is substantially similar to one of the listed transactions that the Secretary delineated in Notice 2007–83, 2007–1 C.B. 960. Thus, according to the IRS, Our Country Home should have filed a Form 8886 with its tax returns, disclosing its participation in the plan. Treas. Reg. § 1.6011–4(d). Because Our Country Home did not file this form, the IRS imposed a $200,000 penalty—the statutory maximum for listed transactions. I.R.C. § 6707A(b)(2)(A).

The IRS offered Our Country Home an opportunity for a preassessment administrative hearing before the Appeals Office. *See* Internal Revenue Manual at 4.32.4.6. Our Country Home accepted the invitation and challenged its liability for the penalty, arguing that the IRS erred in computing the penalty amount and improperly classified participation in the Sterling Plan as a listed transaction. An appeals officer reviewed the relevant documents and discussed the issues with a technical specialist. On July 26, 2012, she held a conference with Our Country Home's counsel. Thereafter, she issued a memorandum explaining that the IRS correctly computed the penalty and properly treated participation in the Sterling Plan as a listed transaction under Notice 2007–83. She thus sustained the penalty in full and closed the case.

On February 18, 2013, the IRS assessed the penalty. A month later, the IRS issued a final notice of intent to levy under § 6330 and informed Our Country Home of its right to a CDP hearing.

On June 25, 2013, Our Country Home requested a CDP hearing with the Appeals Office, once again seeking to con-

test its liability for the penalty. An appeals officer reviewed the transcripts from the earlier preassessment administrative hearing. After determining that the Appeals Office had already considered a liability challenge to the same penalty, the officer concluded that § 6330(c)(2)(B) precluded Our Country Home from bringing another liability challenge. For that reason, the Appeals Office issued a notice of determination dismissing Our Country Home's challenge and sustaining the proposed levy action.

Our Country Home then filed a petition in tax court seeking review of the Appeals Office's decision. The government moved for summary judgment, arguing that, because Our Country Home had a prior opportunity to dispute its liability with the Appeals Office, § 6330(c)(2)(B) precluded a second liability challenge in the CDP hearing. The government also sought dismissal under § 6330(c)(4)(A). After a hearing, the tax court granted the government's motion, holding that § 6330(c)(2)(B) barred Our Country Home's petition.

Our Country Home timely appealed, arguing that the Appeals Office should have allowed Our Country Home to contest its liability for the reporting penalty in the CDP hearing: this would have enabled Our Country Home to challenge its liability before the tax court.

We have jurisdiction to review the tax court's decision. *See* I.R.C. § 7482(a)(1). We note that the merits of Our Country Home's tax liability are not before us. At this juncture, we decide only whether Our Country Home was entitled to challenge its liability in its CDP hearing.

## II.    ANALYSIS

As a preliminary matter, the government argues that Our Country Home's appeal is moot under the doctrine of collateral estoppel. We address this argument first, and then turn to the main issue on appeal: whether Our Country Home should have been able to challenge its liability in its CDP hearing.

### A.  The Government's Mootness Argument

The government contends that Our Country Home's appeal is moot. "Under Article III, cases that do not involve actual, ongoing controversies are moot and must be dismissed for lack of jurisdiction." *Wis. Right to Life, Inc., v. Schober*, 366 F.3d 485, 490–91 (7th Cir. 2004) (citations and internal quotation marks omitted). "A case may become moot if the court can no longer affect the rights of litigants in the case." *Evers v. Astrue*, 536 F.3d 651, 662 (7th Cir. 2008) (citations and internal quotation marks omitted).

The government argues that the mootness doctrine applies here because collateral estoppel would bar Our Country Home from challenging its liability for the § 6707A penalty in a CDP hearing. "Under the doctrine of collateral estoppel (also known as issue preclusion), 'once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.'" *Carter v. Comm'r*, 746 F.3d 318, 321 (7th Cir. 2014) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). The government notes that Our Country Home already litigated the same issue it sought to litigate in the CDP hearing—that is, whether participation in the Sterling Plan

constitutes a listed transaction—in a separate deficiency proceeding before the tax court.[1] That proceeding concerned a deficiency proposed against Our Country Home for the company's deductions of its payments into the Sterling Plan, which the IRS claimed were improper. For that reason, the IRS proposed a § 6662A penalty against Our Country Home, taking the position that the deficiency was related to a reportable transaction that was disclosed inadequately.[2]

The tax court upheld the § 6662A penalty, concluding that the Sterling Plan was a listed transaction because it was substantially similar to a transaction listed in Notice 2007–83, 2007–1 C.B. 960. *Our Country Home Enters., Inc. v. Comm'r*, 145 T.C. 1, 64 (2015). Thus, the government contends that, even if we were to conclude that Our Country Home should have been able to challenge its liability in a CDP hearing, that result would not affect Our Country Home's rights: Our Country Home still would lose because the tax court has already determined that the Sterling Plan constitutes a listed transaction.

---

[1] In a separate motion, the government moved to admit a supplemental appendix containing court-filed documents related to Our Country Home's deficiency proceeding in tax court. Evidence Rule 201 allows us to take judicial notice of documents filed in related cases. *See Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012); Fed. R. Evid. 201(b)(2). We take "judicial notice of the indisputable facts that those documents exist, they say what they say, and they have had legal consequences." *Indep. Trust Corp.*, 665 F.3d at 943.

[2] The terms "reportable transaction" and "listed transaction" mean the same thing under both § 6662A and § 6707A. I.R.C. § 6662A(d).

The government is wrong for two reasons. First, it overlooks the fact that, in the CDP hearing, Our Country Home sought to challenge not only whether the Sterling Plan constitutes a listed transaction but also whether the IRS properly calculated the § 6707A penalty. The tax court's decision in the deficiency proceeding did not address the calculation issue at all. Nor could it have done so: as the government concedes, "the [§ 6707A] penalties in this case could not have been challenged in [Our Country Home's] deficiency proceedings." (Appellee's Br. at 22 n.7.) That's because § 6707A penalties are not deficiencies, but instead constitute reporting penalties, imposed solely for a taxpayer's failure to disclose and even if the result is an overpayment of tax. *Smith*, 133 T.C. at 428–29. "Because § 6707A penalties are not subject to deficiency procedures," Our Country Home could not have directly challenged the penalty amount in tax court. *Keller Tank Servs.*, 2017 WL 1424973, at *5. Thus, Our Country Home is not collaterally estopped from raising the calculation issue.

Second, even if we were to conclude that collateral estoppel bars Our Country Home's liability challenge—at least insofar as the challenge concerns whether participation in the Sterling Plan constitutes a listed transaction—we still would not dismiss the case on mootness grounds. As the Tenth Circuit has held, "[u]nlike mootness, an Article III jurisdictional bar, collateral estoppel is an affirmative defense. … When a collateral estoppel defense defeats a claim, it does so on the merits, not by displacing jurisdiction." *Id*. at 1267.

Accordingly, the government's mootness argument fails.[3]

*B. Our Country Home's Liability Challenge*

The main issue on appeal is whether Our Country Home should have been able to challenge its liability for the § 6707A penalty in its CDP hearing. The tax court granted the government's motion for summary judgment, dismissing Our Country Home's petition. We review tax court decisions "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." *Kindred*, 454 F.3d at 693 (quoting I.R.C. § 7482(a)(1)). Because "[t]he material facts are undisputed and petitioner[] present[s] only questions of law," "we review the Tax Court's decision to grant summary judgment *de novo*." *Id*. at 693–94.

Our Country Home asserts that its prior liability challenge in the administrative hearing did not preclude a second liability challenge in the CDP hearing. We disagree and hold that §§ 6330(c)(2)(B) and 6330(c)(4)(A) precluded the second challenge.[4]

    *1. I.R.C. § 6330(c)(2)(B)*

The tax court dismissed Our Country Home's petition under § 6330(c)(2)(B). Section 6330(c)(2)(B) allows a taxpayer to challenge the existence or amount of a tax liability at a

---

3 In so holding, we reach the same result as the Tenth Circuit did in *Keller Tank Services*, 2017 WL 1424973, at *12.

4 In so holding, we reach the same result as the Tenth Circuit did in *Keller Tank Services*, 2017 WL 1424973, at *12 (with respect to § 6330(c)(2)(B)), and the Fourth Circuit did in *Iames v. Comm'r*, 850 F.3d 160, 164 (4th Cir. 2017) (with respect to §§ 6330(c)(2)(B) and 6330(c)(4)(A)).

CDP hearing so long as the taxpayer "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." Because the § 6707A penalty is not a deficiency, the IRS did not furnish (and never could have furnished) a notice of deficiency to Our Country Home. So the issue here is whether Our Country Home's liability challenge before the Appeals Office constituted a prior opportunity to dispute liability.

Before we analyze the issue, we take a moment to explain why this issue is so important for taxpayers like Our Country Home. On the surface, Our Country Home seemingly has suffered no real harm: it already challenged its liability before the Appeals Office, and its only loss appears to be not being able to do so again in a CDP hearing. But the CDP hearing amounts to much more than a second bite at the apple. Indeed, insofar as a taxpayer uses the CDP process to challenge its liability, the administrative portion of the hearing is largely irrelevant. That's because taxpayers have the right to seek judicial review of the Appeals Office's decision in tax court. I.R.C. § 6330(d)(1). And the tax court reviews the Appeals Office's determinations on liability *de novo*. *Gyorgy*, 779 F.3d at 472. Thus, when liability is at issue, the administrative leg of a CDP hearing is better understood as a gateway to prepayment, *de novo* judicial review.

Unfortunately for Our Country Home, in that administrative leg, the Appeals Office concluded that § 6330(c)(2)(B) precluded the company's liability challenge. This ruling extinguished Our Country Home's right to prepayment judicial review: because Our Country Home could not raise the liability issue in the administrative part of the hearing, the tax court had nothing to review. *See Goza*, 114 T.C. at 182–83

(noting that the tax court's review is limited to the issues raised in the CDP hearing). For that reason, the tax court granted the government's motion for summary judgment and dismissed Our Country Home's petition.

Moreover, the CDP process is the only way that Our Country Home could have obtained prepayment judicial review of its § 6707A penalty. As explained above, because a § 6707A penalty is not a deficiency and is thus not subject to deficiency procedures, Our Country Home could not have directly challenged its liability in tax court. *Keller Tank Servs.*, 2017 WL 1424973, at *5. In fact, the only other way that Our Country Home could have obtained any sort of judicial review would have been to pay the penalty in full and sue for a refund. *Bartman*, 446 F.3d at 787; I.R.C. § 7422(a).

Our Country Home and the government offer competing interpretations of what a prior "opportunity to dispute" means. Our Country Home contends that a prior opportunity means a prior judicial opportunity; this interpretation would ensure Our Country Home a prepayment judicial opportunity to challenge its liability before paying the $200,000 penalty. On the other hand, the government argues that a prior opportunity encompasses all opportunities—judicial and administrative alike; this interpretation eliminates the right to prepayment judicial review through the CDP process for taxpayers like Our Country Home who have already received prepayment administrative opportunities to contest liability.

We acknowledge that the government's interpretation effectively closes the door to prepayment judicial relief for taxpayers in Our Country Home's position. Nevertheless, we uphold the government's interpretation under *Chevron*.

The *Chevron* doctrine teaches that "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984). Specifically, "[w]hen a statute is ambiguous, courts must defer to an agency's reasonable interpretation of the statute." *Sarmiento v. Holder*, 680 F.3d 799, 802 (7th Cir. 2012).

Here, the Secretary of Treasury has determined that § 6330(c)(2)(B) is ambiguous because it is unclear whether "opportunity to dispute" includes a judicial opportunity, an administrative one, or both. So the Secretary issued a regulation interpreting the statute. In that regulation, the Secretary explained that "[a]n opportunity to dispute the underlying liability includes a prior opportunity for a conference with [the] Appeals [Office] that was offered either before or after the assessment of the liability." Treas. Reg. § 301.6330–1(e)(3) Q&A–E2. The regulation goes on to say that "[a]n opportunity for a conference with [the] Appeals [Office] prior to the assessment of a tax subject to deficiency procedures is not a prior opportunity for this purpose." *Id*.

To determine whether this regulation is entitled to *Chevron* deference, we employ a two-step test. *Brumfield v. City of Chicago*, 735 F.3d 619, 626 (7th Cir. 2013). "First, we determine whether the statute is silent or ambiguous on the question at issue"—here, what constitutes a prior opportunity to dispute liability for a tax penalty. *Id*. "If the statute is unambiguous on the question, we give effect to the unambiguous statutory language and the inquiry goes no further." *Id*. But "[i]f the statute is silent or ambiguous, the second step is to determine whether the agency has promulgated a reasona-

ble interpretation of the statute; if so, we defer to that inter-
pretation." *Id*.

The tax court dismissed Our Country Home's petition,
finding an earlier tax court opinion—*Lewis v. Commissioner*,
128 T.C. 48 (2007)—to be controlling. (R. 31 at 3.) In *Lewis*,
like here, the taxpayer sought a second liability challenge in
a CDP hearing after having previously challenged his liabil-
ity in a conference with the Appeals Office. 128 T.C. at 49.
The court concluded that the earlier conference precluded
the second challenge. *Id*. at 62. The court relied on *Chevron* to
reach this conclusion, finding that, although § 6330(c)(2)(B)'s
"opportunity to dispute" language was ambiguous, the reg-
ulation reasonably interpreted this language to include ad-
ministrative proceedings before the Appeals Office. 128 T.C.
at 54–56, 61.

In our analysis, we begin with *Chevron*'s first step, asking
whether the statute is ambiguous. To answer this, we "exam-
ine the text of the statute—in this case, the relevant section of
the tax code." *Bankers Life & Cas. Co. v. United States*, 142 F.3d
973, 983 (7th Cir. 1998). We also consider "the language and
design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*,
486 U.S. 281, 291 (1988).

We agree with the tax court that § 6330(c)(2)(B) is ambig-
uous. As Our Country Home admits, the statute "does not
specifically state whether only a prior judicial opportunity to
dispute the tax prevents a taxpayer from challenging the
merits of a tax liability in a CDP case or whether a prior ad-
ministrative opportunity" will suffice to preclude the second
liability challenge. (Appellant's Br. at 22–23.) Our Country
Home further concedes that "[t]here are two ways in which
a taxpayer can dispute a tax liability: (1) administratively;

and (2) judicially." (*Id*. at 22.) Thus, at the very least, the statute's text is susceptible to competing interpretations.

Moreover, there is nothing in the surrounding statutory language suggesting that only judicial proceedings count as prior opportunities. To the contrary, the surrounding text only compounds the ambiguity. For example, as noted above, § 6330(c)(4)(A) unambiguously rebuffs a taxpayer's attempt to raise an issue at a CDP hearing when "the issue was raised and considered … in any other previous *administrative* or *judicial* proceeding." (emphases added). This shows that Congress knew how to cabin the types of hearings that preclude taxpayers from raising future challenges; but for whatever reason, Congress decided not to draft § 6330(c)(2)(B) with the same degree of specificity. That renders § 6330(c)(2)(B) ambiguous.

Because there is no plain language in the statute supporting the argument that only judicial proceedings count as prior opportunities, Our Country Home relies on the doctrine of *noscitur a sociis*—a canon of statutory interpretation—to bolster its argument. The Latin phrase *noscitur a sociis*, "literally translated as 'it is known by its associates' … counsels lawyers reading statutes that 'a word may be known by the company it keeps.'" *Graham Cty. Soil & Water Conservation Dist. v. United States*, 559 U.S. 280, 287 (2010) (citations omitted). Specifically, when words "are associated in a context suggesting that the words have something in common, they should be assigned a permissible meaning that makes them similar." Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 195 (2012). Consider a statute applicable to "monitors, keyboards, printers, and mice." These words are clearly associated—all of

them being computer accessories. In this case, *noscitur a sociis* applies to preclude a reading of the word "mice" to include rodents. *See id.* at 196.

Our Country Home suggests that this canon applies here and mandates limiting the phrase "opportunity to dispute" to judicial opportunities. The argument is based on § 6330(c)(2)(B)'s other proscription to liability challenges in CDP hearings—that is, receipt of a notice of deficiency—which gives a taxpayer the right to seek prepayment judicial review of a tax liability in tax court. *Murray*, 24 F.3d at 903. Because receiving a notice of deficiency entitles one to prepayment judicial review, Our Country Home contends that "opportunity to dispute" similarly refers to an opportunity for prepayment judicial review.

Not so. Indeed, nothing in the statute suggests that the words "notice of deficiency" and "opportunity to dispute" are conjoined in a way that indicates that they share some common quality. *See* Reading Law at 196. For one thing, the canon typically applies to words grouped in a list. *Id.* at 195. "Notice of deficiency" and "opportunity to dispute," however, are not really listed; instead, they are two phrases that "are too few and too disparate to qualify as a string of statutory terms or items in a list." *Graham Cty.*, 559 U.S. at 288–89 (internal citations and quotation marks omitted). As the Supreme Court has held, "[a] list of three items, each quite distinct from the other no matter how construed, is too short to be particularly illuminating" for purposes of *noscitur a sociis*. *Id.* at 288. If that's the case for three words grouped together, "a list of two [phrases] … must also be too short." *United States v. Franklin*, 785 F.3d 1365, 1369 (10th Cir. 2015).

For another thing, Our Country Home's argument is logically flawed: the company tries proving its point by selecting one statutory example of an event that precludes future liability challenges (the receipt of a notice of deficiency) and then cherry picking one aspect of that example (the right to prepayment judicial review) and applying it to another event that precludes future liability challenges (a prior opportunity to dispute liability). But as the government notes, "notice of deficiency" and prior "opportunity to dispute" share other characteristics, too. For instance, both of these events require the IRS to provide notice of the opportunity to be heard. Also, both events give taxpayers the right to be heard before independent decisionmakers. These characteristics are just as consistent with administrative hearings before the Appeals Office as they are with judicial proceedings before the tax court. Thus, the canon of *noscitur a sociis* does not help Our Country Home resolve the statute's ambiguity.

Because we determine that § 6330(c)(2)(B) is ambiguous, we turn to *Chevron*'s next step, which asks whether the IRS's interpretation of this statute is reasonable. In our analysis, we need not conclude that the IRS's interpretation is the best interpretation from a textual or policy standpoint. *See Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 218 (2009). So long as the IRS's interpretation is reasonable, we must apply it. *Brumfield*, 735 F.3d at 626.

We agree with the tax court's determination that the regulation reasonably interprets § 6330(c)(2)(B)'s "opportunity to dispute" language to include prior conferences with the Appeals Office, excluding conferences prior to the IRS's assessment of a tax subject to deficiency procedures. We begin with § 6330(c)(2)(B)'s text, which allows a taxpayer to chal-

lenge his liability for a tax in a CDP hearing unless he had a prior "opportunity to dispute such tax liability." This text neither forecloses administrative opportunities nor suggests that including them is unreasonable. Thus, there is nothing conspicuously wrong with the IRS's interpretation.

Moreover, other provisions in the statute lend support to the IRS's interpretation. As noted above, § 6330(c)(4)(A) precludes a taxpayer from raising an issue at a CDP hearing if "the issue was raised and considered at a … previous *administrative* or judicial proceeding." (emphasis added). Our Country Home has not explained why Congress considers an administrative proceeding to be an adequate forum for purposes of § 6330(c)(4)(A) but not for § 6330(c)(2)(B).

In fact, it is more likely that Congress considers administrative proceedings to be appropriate forums for most prepayment tax challenges. Indeed, Congress has enacted legislation to "ensure an independent appeals function within the Internal Revenue Service." Internal Revenue Service Restructuring and Reform Act of 1998, 112 Stat. at 689, § 1001(a)(4). Congress also sought to increase access to the Appeals Office and to ensure that taxpayers receive information about opportunities for prepayment administrative hearings. *Id*. at 767–68, 771 §§ 3465, 3504. "These provisions … make clear that Congress was concerned with providing taxpayers a meaningful process, short of litigation, in which they could resolve tax disputes with [the IRS]." *Lewis*, 128 T.C. at 60; *see also Porter v. Comm'r*, 130 T.C. 115, 138 (2008) ("Congress saw the informal Appeals process as serving an important function in resolving tax disputes while giving taxpayers a meaningful opportunity to voice their concerns.").

On the other hand, if we were to adopt Our Country Home's interpretation and read § 6330(c)(2)(B) to exclude administrative hearings, this would frustrate Congress's goals by encouraging a taxpayer to delay disputing his liability until his CDP hearing. *Lewis*, 128 T.C. at 58. Because § 6330(c)(4)(A) precludes a taxpayer from raising an argument at a CDP hearing that he previously raised at an administrative hearing, a strategic taxpayer who wants to litigate his tax liability in tax court would decline an invitation from the IRS to challenge the liability in a preassessment hearing before the Appeals Office. This way, the taxpayer could ensure that the issue of his liability is preserved for review at a CDP hearing, which eventually leads to *de novo* judicial review in tax court. This system "would minimize the role of the Appeals Office and contradict the purpose of the 1998 IRS Restructuring and Reform Act." *Keller Tank Servs.*, 2017 WL 1424973, at *16.

Our Country Home suggests that the *government's* approach fosters inefficiency, arguing that a taxpayer simply could decline an invitation to challenge his tax liability in an administrative hearing and thus preserve the issue for review in a later CDP hearing. But that's not the case. Section 6330(c)(2)(B) speaks to *opportunities* to dispute liability, not opportunities that a taxpayer actually exercised. *Id.* at 1273. Thus, a taxpayer need not pursue that opportunity to be barred from raising a liability challenge in a CDP hearing.

Our Country Home contends that the regulation is unreasonable for other reasons. First, Our Country Home suggests that the regulation purports to limit the tax court's jurisdiction. But the regulation doesn't address jurisdiction at all; the regulation does nothing more than specify the issues

that a taxpayer may raise in a CDP hearing. For that reason, the cases Our Country Home cites are inapposite. *See, e.g., Shweika v. Dep't of Homeland Sec.*, 723 F.3d 710, 714–15, 717–18 (6th Cir. 2013) (declining to defer to an agency regulation limiting the district courts' ability to review the denial of a naturalization application); *Lindstrom v. United States*, 510 F.3d 1191, 1195 n.3 (10th Cir. 2007) (declining to defer to an EEOC right-to-sue letter when ascertaining federal-court jurisdiction).

True enough, the regulation does ultimately affect the *issues* that the tax court can review: because the tax court may review only those issues raised before the Appeals Office in the administrative leg of a CDP proceeding, a regulation that circumscribes the issues that a taxpayer can raise in that leg affects the extent of the tax court's review of the Appeals Office's decision. *See Goza*, 114 T.C. at 182–83. This does not mean, however, that the regulation affects the tax court's *jurisdiction*. Indeed, Our Country Home could have raised "any relevant issue relating to the unpaid tax or the proposed levy" at the CDP hearing, including collection alternatives and challenges to the proposed collection action. I.R.C. § 6330(c)(2)(A). Had Our Country Home raised these other issues, the tax court would have had jurisdiction to review the Appeals Office's resolution of them. Instead, Our Country Home challenged only its liability. Because this was Our Country Home's only challenge, the tax court dismissed the petition under § 6330(c)(2)(B).

Moreover, the regulation left intact Our Country Home's right to file a refund suit in federal court after paying the tax. Thus, at all times, Our Country Home had a judicial forum available in which it could have challenged its liability.

Our Country Home next contends that the regulation is internally inconsistent. This argument is based on the facts that the regulation (1) includes only administrative hearings before the Appeals Office and excludes opportunities to dispute liability before the Examination Division of the IRS, and (2) excludes hearings before the Appeals Office prior to the assessment of a tax subject to deficiency procedures. Our Country Home assumes that, to be reasonable, § 6330(c)(2)(B) must include all prior administrative opportunities to dispute liability or none. But as the government notes, Our Country Home offers no support for this assumption. And we see no reason to invalidate a regulation for this reason—especially when the government offers compelling justifications for drawing distinctions between these different types of administrative proceedings.

For example, the IRS excluded hearings before the Examination Division because that division conducts civil tax audits—"investigative procedure[s] used to determine whether an individual has paid all of his or her taxes." *United States v. Peters*, 944 F. Supp. 646, 648 (N.D. Ill. 1996), *aff'd*, 153 F.3d 445 (7th Cir. 1998). Thus, by nature, the Examination Division and taxpayers are adversarial parties. The Appeals Office, on the other hand, is an independent bureau of the IRS charged with impartially resolving disputes between the government and taxpayers. *See Gyorgy*, 779 F.3d at 472. Moreover, Congress has determined that hearings before this office constitute significant protections for taxpayers. *See Iames v. Comm'r*, 850 F.3d 160, 165–66 (4th Cir. 2017). The regulation's distinction between these two administrative forums is thus not inconsistent: it actually makes perfect sense.

So too does the regulation's exclusion of administrative hearings conducted before the assessment of a tax subject to deficiency procedures. As noted above, Congress treats deficiency-related taxes differently from nondeficiency-related taxes. For instance, before the IRS can assess a deficiency, it must issue a notice of deficiency to the taxpayer, entitling the taxpayer to seek prepayment judicial review in tax court. *Murray*, 24 F.3d at 903. Taxpayers faced with nondeficiency tax penalties (like the § 6707A penalty at issue here), however, do not have direct access to tax court. *See Keller Tank Servs.*, 2017 WL 1424973, at *5.

Because there are different procedures for different types of tax liabilities, it is certainly reasonable for the IRS to exclude preassessment administrative challenges of tax liabilities subject to deficiency procedures from the definition of "opportunity to dispute." This ensures that a taxpayer's ability to challenge his liability for a deficiency-related tax in a CDP hearing is consistently determined by reference to whether the taxpayer received a notice of deficiency for that tax. If the taxpayer received a notice of deficiency, § 6330(c)(2)(B) precludes him from challenging his liability in a CDP hearing, which makes sense given that the notice of deficiency entitles him to prepayment judicial review in tax court anyway. If, however, for whatever reason, the taxpayer does not receive a notice of deficiency for a deficiency-related tax, the regulation ensures the right to prepayment judicial review in tax court following the CDP hearing, irrespective of whether he previously challenged his liability in a preassessment administrative hearing before the Appeals Office. Congress treats tax deficiencies differently from nondeficiency tax penalties; there is nothing inconsistent about a regulation that does the same thing.

Finally, Our Country Home argues that the regulation's inclusion of administrative opportunities renders § 6330(c)(2)(B) superfluous. Specifically, Our Country Home claims that, if § 6330(c)(2)(B) includes both administrative and judicial opportunities to dispute liability, because taxpayers generally can challenge their tax liabilities administratively before payment, "taxpayers would never be able to challenge the merits of the underlying tax liability in a CDP case." (Appellant's Br. at 43–44.)

But that is not so. As Our Country Home concedes, taxpayers challenging § 6707A penalties are only "sometimes" given the right to a preassessment hearing before the Appeals Office. (*Id.* at 29 (emphasis removed).) Moreover, Our Country Home further admits that "there are situations where taxpayers, for whatever reason, are not afforded the right to a pre-assessment hearing with the Office of Appeals for additional taxes and/or penalties which the IRS can assess without issuing a [notice of deficiency]." (*Id.*) That's why Our Country Home does not deal in absolutes and instead asserts that "administrative opportunities can be pursued in *almost* every collection case" before the CDP process begins. (*Id.* at 12 (emphasis added).) But because there are circumstances in which a taxpayer cannot pursue a prepayment administrative challenge, the regulation's inclusion of administrative opportunities does not render § 6330(c)(2)(B) superfluous.

Even so, Our Country Home contends that it is problematic that a taxpayer's right to prepayment judicial review depends on "the whim and fancy of the IRS in setting its own administrative procedures." (Appellant's Br. at 51.) Indeed, the IRS generally is not required to follow the Internal

Revenue Manual and thus technically may pick and choose if and when it offers a taxpayer an invitation to challenge a tax liability before the Appeals Office. *See United States v. Caceres*, 440 U.S. 741, 754 n.18 (1979). So the ability to challenge a liability in tax court "could vary from case to case and taxpayer to taxpayer, depending on whether the IRS changed its administrative procedures to permit (or to not permit) an opportunity for a hearing with the Office of Appeals." (Appellant's Br. at 51.)

We do not view this situation as ominously as Our Country Home does. What Our Country Home fails to consider is the possibility that Congress actually would prefer questions of liability concerning nondeficiency-related taxes to be decided outside the CDP context. *See Iames*, 850 F.3d at 165 (suggesting that "Congress envisioned only limited CDP review of the taxpayer's underlying liability"). Outside this context, a taxpayer generally can challenge his liability for a nondeficiency tax liability only through a postpayment refund suit in federal court. In this case, the United States receives the payment it believes it is owed before it deals with the taxpayer's liability challenge. And the government prefers it this way: after all, "taxes are the lifeblood of government, and their prompt and certain availability an imperious need." *Bull*, 295 U.S. at 259. Nevertheless, on the rare occasions in which the IRS has failed to give a taxpayer a prepayment administrative opportunity to challenge his tax liability, the CDP process is available as a stopgap to provide that opportunity. This system ensures that a taxpayer will always have some forum—judicial or administrative—in which he can challenge a tax before paying it. Thus, from a policy perspective, the regulation is reasonable.

We note that some judges have questioned the *Chevron* doctrine's wisdom. *See Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142, 1149–58 (10th Cir. 2016) (Gorsuch, J., concurring). Others have called upon the Supreme Court and Congress to revisit that doctrine. *Egan v. Del. River Port Auth.*, 851 F.3d 263, 278 (3d Cir. 2017) (Jordan, J., concurring). Until that happens, we are bound by the Supreme Court's decision. Fortunately here, the government not only has reasonably interpreted an ambiguous statute but also has offered the most compelling interpretation—certainly more compelling than Our Country Home's interpretation. *See Gutierrez-Brizuela*, 834 F.3d at 1158 (Gorsuch, J., concurring) (noting that, in a world without *Chevron*, "courts could and would consult agency views and apply the agency's interpretation when it accords with the best reading of a statute"). Section 6330(c)(2)(B)'s "opportunity to dispute" language encompasses all prior opportunities to dispute liability, including administrative ones. Because Our Country Home had a prior opportunity to contest its liability in an administrative forum, the tax court properly granted the government's motion for summary judgment dismissing Our Country Home's petition on § 6330(c)(2)(B) grounds.

### 2. *I.R.C. § 6330(c)(4)(A)*

Alternatively, the government contends § 6330(c)(4)(A) precluded Our Country Home from challenging its liability at the CDP hearing.[5] Section 6330(c)(4)(A) prevents a tax-

---

[5] The government raised its § 6330(c)(4)(A) argument in a supplement to its motion for summary judgment, and Our Country Home received an opportunity to respond to this argument. Although the tax court did not rule on this issue, we "may affirm on any ground supported in the rec-

(continued…)

payer from raising an issue at a CDP hearing if "the issue was raised and considered at a … previous administrative or judicial proceeding" and he "participated meaningfully" in that proceeding.

"[W]hen interpreting a statute, we must begin with its text and assume 'that the ordinary meaning of that language accurately expresses the legislative purpose.'" *Middleton v. City of Chicago*, 578 F.3d 655, 658 (7th Cir. 2009) (quoting *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004)). "When a statute is unambiguous, we must enforce the plain meaning of the language enacted by Congress." *Trs. of the Chi. Truck Drivers, Helpers and Warehouse Workers Union (Ind.) Pension Fund v. Leaseway Transp. Corp.*, 76 F.3d 824, 828 (7th Cir. 1996) (internal quotation marks omitted).

Here, it appears that § 6330(c)(4)(A)'s plain language precludes Our Country Home's second liability challenge. It is undisputed that Our Country Home challenged its liability for the § 6707A penalty in a prior administrative proceeding before the Appeals Office. It is further undisputed that Our Country Home's counsel actively participated in that proceeding. Thus, liability seems to be an issue that Our Country Home has previously raised, *see Iames*, 850 F.3d at 167; and it did so at a proceeding in which it participated meaningfully.

---

(…continued)

ord, so long as that ground was adequately addressed … and the non-moving party had an opportunity to contest the issue." *Peretz v. Sims*, 662 F.3d 478, 480 (7th Cir. 2011) (internal quotation marks omitted).

Our Country Home disagrees, arguing that the word "issue"—as the term is used in § 6330(c)(4)(A)—does not encompass liability challenges. To support this argument, Our Country Home notes that the IRS released a notice in 2003, taking the position that, "[b]ecause section 6330(c)(2)(B) explicitly applies to challenges of tax liability, section 6330(c)(4) with its more stringent requirement of meaningful participation applies to non-liability issues." Office of Chief Counsel Notice CC–2003–016 at 20 (May 29, 2003). Our Country Home also notes, however, that, in 2006, the IRS replaced the 2003 notice with a new notice that does not take a position on whether § 6330(c)(4) encompasses liability challenges and instead simply recites the statute's text. *See* Office of Chief Counsel Notice CC–2006–019 (Aug. 18, 2006). At some point thereafter, the IRS changed its mind and now contends that § 6330(c)(4)(A) includes liability challenges.

Just because the IRS changed its interpretation of what § 6330(c)(4) says does not mean that the IRS was right before and wrong now. Nevertheless, as Our Country Home cogently argues, "[t]he fact that the [IRS] has recently 'changed [its] mind' on a subject as important as the scope of the Tax Court's ability to determine the merits of a tax liability, after taking a different position for over 15 years, is unsettling to say the least." (Appellant's Reply Br. at 15.) Thus, a more thorough examination of the statute is warranted.

Our Country Home contends that, because § 6330(c)(2)(B) explicitly deals with liability, the word "issue" as used in § 6330(c)(4)(A) does not encompass liability. But other parts of the statute militate against this reading. Consider § 6330(c)(3). That subsection requires an appeals officer to take into consideration, among other things, "the

*issues* raised under [§ 6330(c)(2)]" when making its determination. I.R.C. § 6330(c)(3)(B) (emphasis added). Section 6330(c)(2), in turn, describes the "issues" that a taxpayer may raise at a CDP hearing, including both nonliability issues and liability issues alike. It makes more sense to read words consistently throughout the statute instead of using Our Country Home's approach. Because the word "issue" encompasses liability challenges in §§ 6330(c)(2)(B) and 6330(c)(3)(B), we read the word "issue" as used in § 6330(c)(4)(A) to reach liability, as well.

Finally, Our Country Home claims that reading § 6330(c)(4)(A) to include liability challenges is inconsistent with Treasury Regulation § 301.6330–1(e)(3) Q&A–E2, which we have concluded is a reasonable interpretation of § 6330(c)(2)(B)'s "opportunity to dispute" language. Our Country Home might have a point here. The regulation provides that "[a]n opportunity for a conference with [the] Appeals [Office] prior to the assessment of a tax subject to deficiency procedures is not a prior opportunity for this purpose." Treas. Reg. § 301.6330–1(e)(3) Q&A–E2. As we note above, the purpose of this regulation is to ensure that a taxpayer faced with a deficiency-related tax can judicially challenge that tax before paying it, whether he does so directly in tax court after receiving a notice of deficiency or later on in a CDP hearing in the event that he did not receive a notice of deficiency.

But this purpose is frustrated if we read § 6330(c)(4)(A) to include liability challenges. Under this reading, a taxpayer who did not receive a notice of deficiency but who nonetheless wishes to challenge his liability for a tax deficiency in a preassessment administrative hearing might find himself

unwittingly playing a game of legal "gotcha": on the one hand, § 301.6330–1(e)(3) Q&A–E2 assures him that a preassessment administrative hearing before the Appeals Office will not preclude a future liability challenge in a CDP proceeding, which entitles him to subsequent review in tax court; on the other hand, if he does challenge his liability in that administrative hearing, § 6330(c)(4)(A) prohibits him from challenging his liability again in a later CDP hearing. This situation suggests that § 6330(c)(4)(A) and the regulation are inconsistent. *See Hampton Software Dev., LLC v. Comm'r*, 111 T.C.M. (CCH) 1165, *7 n.9 (2016) (noting that § 6330(c)(4)(A) and § 301.6330–1(e)(3) Q&A–E2 are inconsistent, and thus, § 6330(c)(4)(A) does not preclude a taxpayer who administratively challenged a deficiency-related tax from challenging liability again in a CDP hearing).

There is, however, a way to read the regulation so that it comports with the statute. The regulation speaks to *opportunities* to dispute liability. In the above scenario, the taxpayer presumably could decline a preassessment invitation to challenge his liability before the Appeals Office. In that case, even though the taxpayer had an *opportunity* to dispute liability, because he never actually *challenged* his liability, neither § 6330(c)(4)(A) nor § 301.6330–1(e)(3) Q&A–E2 would preclude his ability to do so in a later CDP hearing. Under this reading, the regulation and statute are not inconsistent.

We acknowledge that this might not be a desirable outcome. Indeed, one could argue that this reconciliation between the regulation and statute not only fosters inefficiency and encourages dilatory practices; it also rewards the savvy, knowledgeable taxpayer who is aware of this loophole and

punishes the novice who, like the tax guru, might prefer a prepayment judicial opportunity to dispute his liability, but who is tricked into thinking that addressing his liability at the first available opportunity in an informal, administrative setting is the best course of action. Regardless of the merits of this critique, it's our job to interpret laws, not make them; if a law is bad policy, it's up to Congress and the IRS to figure out a better solution.

Under § 6330(c)(4)(A)'s plain language, because Our Country Home raised the issue of its liability in a prior hearing before the Appeals Office, and because Our Country Home participated meaningfully in that hearing, Our Country Home could not contest its liability again in its CDP hearing.

### III.    CONCLUSION

For the reasons above, we AFFIRM the tax court's grant of summary judgment.