In the

# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 22-1084 & 22-1085

RONALD M. GOLDBERG and GAIL GOLDBERG,

*Petitioners-Appellants*,

*v.*

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee*.

_____

Appeals from the United States Tax Court.
Nos. 12871-18L & 13148-18L.

_____

ARGUED JANUARY 11, 2023 — DECIDED JULY 14, 2023

_____

Before WOOD, BRENNAN, and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. Ronald and Gail Goldberg owe more than $500,000 in federal taxes stemming from their interests in two partnerships. The Goldbergs believe the statute of limitations for the IRS's assessment of these taxes has passed, and they assert that the IRS's failure to mail them adequate notice when it started auditing their partnerships excuses their own failure to raise this challenge in earlier tax proceedings. Because the Goldbergs received notice and had a prior opportunity to contest the partnership tax liabilities—

independent of any alleged failing on the IRS's part—we af-
firm the Tax Court's decision to sustain the IRS's lien and levy
on the Goldbergs' property to collect the outstanding tax lia-
bilities.

## I.  Partnership Taxation Under the Tax Equity and Fiscal Responsibility Act

Reviewing the Tax Court's decision requires some back-
ground in partnership taxation. Bear with us as we parse the
provisions governing the calculation of partnership taxes, the
collection of those taxes from individual partners, and the ad-
ministrative proceedings where calculation and collection oc-
cur. As with many areas of tax law, technical jargon and acro-
nyms abound, but we try to unpack everything in plain Eng-
lish.

The Tax Equity and Fiscal Responsibility Act, or TEFRA,
governed partnership tax liability determinations until the
2017 tax year, including the audits at issue in this appeal. See
26 U.S.C. §§ 6221–6234 (2012). Because partnerships are not
themselves taxable entities, a partnership's tax liabilities are
assessed on individual partners in proportion to their owner-
ship interest. Individual partners report their share of a part-
nership's income on their individual tax returns, usually on a
Form 1040, and the partnership itself supplies that infor-
mation on another form, referred to as a Schedule K-1.

In enacting TEFRA, Congress sought to streamline the
overarching liability calculation process by requiring partner-
ship tax determinations to occur in a single proceeding fol-
lowed by separate collections from individual partners, rather
than having multiple ongoing proceedings for each partner.
See Arthur Willis, Philip Postlewaite & Jennifer Alexander,

*Partnership Taxation* ¶ 20.01 (2023) (describing TEFRA's centralized partnership-level process).

To ensure uniformity, Congress provided that determinations made at the partnership level would be final and binding on all partners. See 26 U.S.C. § 6223. Under TEFRA, partners could opt out of the partnership-level proceeding—and the binding partnership-level determinations—by settling separately or electing to convert their items into nonpartnership items for individual review. See *id.* §§ 6221, 6223(e)(3). Partners also reserved the right to challenge partnership-level determinations during the ongoing proceedings through the tax matters partner chosen by the partnership to represent the interests of all other partners. See *id.* § 6224(c)(3)(A); see also *id.* § 6231(a)(7) (defining "tax matters partner").

TEFRA included several safeguards to ensure partners received adequate notice of the partnership-level proceedings before the liability determinations became final. See *id.* § 6223. Partners were first entitled to receive a "notice of beginning of administrative proceedings," commonly shorthanded as an NBAP. As its name implies, the NBAP signaled that the IRS had started reviewing the partnership's tax liabilities. See *id.* § 6223(a)(1). If the IRS made any tax adjustments to partnership-level items, the Service next had to furnish notice of a "final partnership administrative adjustment," or FPAA, that communicated these final, binding adjustments to the partners. See *id.* § 6223(a)(2). TEFRA authorized notice by mail using the partners' addresses listed in the partnership's tax return. See *id.* § 6223(c)(1).

Before the taxes could be assessed, partners had one final chance for review. The tax matters partner had 90 days to file a petition with the Tax Court, see *id.* § 6226(a), and upon such

a filing, all partners became parties to the subsequent pro-
ceedings, see *id.* § 6226(c)(1). If the tax matters partner did not
file a petition, then the other partners had an additional 60
days to file their own petition. See *id.* § 6226(b)(1). Once this
review period ended, the partnership-level liability determi-
nations bound all partners who had not opted out. See *id.*
§ 6230(c)(4); see also *Kaplan v. United States*, 133 F.3d 469, 471
(7th Cir. 1998) ("Section 6226(c) binds all partners to the result
obtained by a legal challenge brought by one partner, thereby
preventing numerous [duplicative] lawsuits.").

The IRS also had to play by certain rules. Indeed, TEFRA
provided relief when the IRS failed to timely mail the NBAP
notifying partners that an audit had commenced. A partner's
available recourse depended on the status of the partnership-
level proceedings at the time the partner received either the
FPAA or actual notice of the tax adjustments. If the IRS's audit
had concluded at the time the partner received notice, the
partner could opt out of the final determination and convert
the partnership items to nonpartnership items for individual
consideration. See 26 U.S.C. § 6223(e)(2). If the IRS's partner-
ship-level audit was still ongoing at the time of notice, how-
ever, the Tax Code provided that the partner "shall be a party
to the proceeding" unless the partner settled or converted the
relevant partnership items into nonpartnership items—the
two options already available to partners receiving timely no-
tice. *Id.* § 6223(e)(3).

## II. Factual Background

These provisions of the Tax Code apply to the case before
us. The IRS would like to collect taxes from Ronald and Gail
Goldberg stemming from Ronald's partnership in the Mata-
dor Arch Program and the Alpha Oil Program—two entities

in the oil and gas industry. Gail is liable for these taxes and penalties because she filed joint tax returns with Ronald in 1998 and 2000, the tax years that Ronald was a partner at the firms. See *id.* § 6231(a)(2); 26 C.F.R. § 301.6231(a)(2)-1(a) (explaining spousal tax liability).

### A. The Goldbergs' Partnership Tax Liabilities

The IRS began auditing the Matador and Alpha partnerships in 2001 and 2002. In connection with those proceedings, the IRS believes it timely sent the required NBAPs to Ronald by certified mail to notify him the audits had started. The Goldbergs later denied receiving an NBAP for either audit, and they also disputed the IRS's proof that these NBAPs were mailed to them. For both the Matador and Alpha proceedings, the IRS further believes it timely sent Ronald the required FPAAs via certified mail to notify him of the final tax adjustments. Prior to filing their petition in this court, the Goldbergs did not dispute the IRS's evidence showing that the Service had mailed the FPAAs to Ronald's address.

In early 2008, after the audits concluded, the tax matters partners for both Alpha and Matador petitioned for readjustment of the partnership item determinations listed in their respective FPAAs. The tax matters partners' petitions proceeded to the Tax Court for review.

On October 5, 2010, while the Tax Court's review of the FPAAs was underway, Ronald sent a letter to the IRS Commissioner challenging his tax liability for both the Alpha and Matador partnership items. In his letter, Ronald stated that he believed the three-year statute of limitations for the tax assessments had expired, so the IRS could not collect any overdue and unpaid taxes from him. The Commissioner responded in

a letter explaining that the limitations period had not expired given the ongoing review of the tax matters partners' petitions in the Tax Court. The Commissioner invited Ronald to raise his statute-of-limitations challenges directly in the Tax Court proceedings before the adjustments became final. The Goldbergs took no action, however.

In June 2013 the Tax Court concluded its review of the Matador and Alpha tax adjustments and entered judgment. No further challenges—by the tax matters partners or by any partners—were brought to contest the Tax Court's orders. The resulting liability determinations became final and binding on all partners in September 2013. The IRS then notified the Goldbergs of the adjustments and, after they refused to pay, initiated collection proceedings.

## B. The IRS's Partnership Tax Collection Authority

We pause to address the IRS's collection authority before introducing the facts of its attempt to collect from the Goldbergs.

When a taxpayer fails to pay the IRS following a tax assessment, the Service can take legal action to collect the overdue taxes. One option is to file a Notice of Federal Tax Lien publicly establishing the IRS's claim to the taxpayer's property. See 26 U.S.C. § 6321. If a taxpayer refuses to pay within 10 days after the IRS's initial notice and demand, the Service can issue a levy notice and seize the taxpayer's property in satisfaction of the unpaid tax liability. See *id.* § 6331. After receiving notice from the IRS, and before the lien or levy is enforced, taxpayers can seek review from the IRS Office of Appeals in a proceeding known as a Collection Due Process, or CDP, hearing. See *id.* §§ 6320(a)(3)(B), 6330(a)(3)(B). The

Office of Appeals must entertain any hearing request for a re-
view of a lien or levy if the taxpayer makes a timely written
request and states the grounds for the challenge. See *id.*
§§ 6320(b)(1), 6330(b)(1).

In reviewing the taxpayer's petition at the CDP hearing,
the settlement officer must consider the Secretary's evidence
verifying "the requirements of any applicable law or admin-
istrative proceeding have been met," see *id.* § 6330(c)(3)(A),
(1); the matters raised by the taxpayer, see *id.* § 6330(c)(3)(B);
and the balance of interests between the collection and its in-
trusiveness on the taxpayer, see *id.* § 6330(c)(3)(C). The officer
then issues a notice of determination declaring whether the
tax assessment is sustained and, if so, whether an alternative
collection process will be followed instead of the lien or levy.

At the CDP hearing, the taxpayer generally may raise "any
relevant issue" to the IRS's collection action, including collec-
tion alternatives and spousal defenses. *Id.* § 6330(c)(2)(A). But
taxpayers cannot contest the tax liability underlying the levy
or lien if the taxpayer previously had an opportunity to lodge
a challenge. See *id.* § 6330(c)(2)(B). By its terms, § 6330(c)(4)(C)
of the Tax Code expressly precludes taxpayers from raising an
issue if "a final determination has been made with respect to
such issue in a proceeding brought under subchapter C of
chapter 63," which refers to TEFRA—the chapter concerning
the tax treatment of partnership items. So a taxpayer cannot
challenge final and binding partnership-item liability deter-
minations in a CDP hearing.

A taxpayer wishing to contest the decision of the Office of
Appeals can petition the Tax Court for review. See *id.*
§ 6330(d). But the Tax Court can consider only those issues

properly raised in the CDP hearing. See *Our Country Home Enters., Inc. v. Comm'r*, 855 F.3d 773, 780 (7th Cir. 2017).

Putting the administrative review process together, then, we see that a partner who fails to challenge the IRS's adjustments to partnership-level items during a TEFRA proceeding cannot later challenge their partnership tax liabilities in a CDP hearing. And because the partner cannot raise the issue of liability in a CDP hearing, the partner also loses the ability to bring that challenge before the Tax Court. Put differently, the TEFRA proceeding is the proper—and when notice is properly furnished, only—venue for partners to challenge partnership-tax liabilities.

## C. The IRS's Assessment of Taxes on the Goldbergs

These administrative processes apply to the Goldbergs' situation.

### 1. Collection Due Process Hearing

In 2014 the Commissioner assessed taxes and penalties on the Goldbergs to collect the outstanding taxes stemming from the adjustments the IRS made to the Matador and Alpha liabilities in the partnership-level proceedings, which were finalized in the Tax Court's 2013 decision. The Commissioner explained in a letter to the Goldbergs that they could not challenge the assessments because they had failed to object during the partnership-level TEFRA proceedings. When the Goldbergs did not pay the overdue and adjusted taxes in response to the assessment notice, the IRS filed a notice of a lien and then a levy to collect the outstanding partnership taxes. The Goldbergs did not respond to the IRS's Notice of Federal Tax Lien, but they did respond to the later levy notice and requested a CDP hearing to challenge the collection.

In June 2016 the IRS Office of Appeals heard the Goldbergs' petition. The Goldbergs challenged their underlying tax liability on statute-of-limitations grounds—the same argument Ronald raised to the Commissioner in his October 2010 letter. The Goldbergs also argued that they could lawfully bring this post-audit challenge because they believed that the IRS failed to send the statutorily required notices of beginning of administrative proceedings—the so-called NBAPs. The IRS's failure to mail the NBAPs, the Goldbergs insisted, excused their own failure to object while TEFRA proceedings were ongoing. The Goldbergs took this position even though they had received actual notice of the TEFRA proceedings from another partner.

Two years later, in 2018, the settlement officer issued her decision sustaining the IRS's proposed lien and levy. The officer found that the Goldbergs had failed to challenge their underlying tax liabilities during the TEFRA proceedings despite being "advised of the beginning of the TEFRA audit and the final audit findings" through mailing of NBAPs and FPAAs. Because the Goldbergs' challenge to the lien was untimely, the officer issued an unappealable decision letter sustaining the lien. The officer issued an appealable notice of determination for the levy because that challenge was timely. The Goldbergs then petitioned the Tax Court for review.

### 2. Tax Court Decision

The Tax Court dismissed the petition for review of the lien because the Office of Appeals properly issued an unappealable decision letter given the Goldbergs' petition on that matter was time-barred.

In considering the Goldbergs' statute-of-limitations challenge to the levy, the Tax Court rejected their argument that they lacked notice to properly raise the issue in the TEFRA proceedings. The Tax Court determined the Office of Appeals correctly concluded that the IRS mailed the final partnership administrative adjustment notices, or FPAAs, based on the Service's evidentiary showing during the CDP hearing—a finding the Goldbergs did not dispute before the Tax Court. The Tax Court also noted Ronald Goldberg's 2010 correspondence with the Commissioner during the Tax Court's earlier review of the partnerships' tax adjustments.

All of this meant that the Goldbergs had actual notice of the ongoing TEFRA proceedings while they were underway, notwithstanding their allegations that the IRS failed to mail them NBAPs at the start of the proceedings. The Tax Court therefore concluded that TEFRA required the Goldbergs to raise these challenges during the partnership-level audit. See 26 U.S.C. § 6223(e)(3). But they never did so. The Goldbergs' statute-of-limitations challenge thus amounted to an improper attempt to appeal their underlying tax liability, one that the Tax Court could not entertain. See *id.* §§ 6230(c)(4), 7422(h).

Finding no legal errors in the Office of Appeals' review of the Goldbergs' petition, the Tax Court went on to hold that the settlement officer properly accounted for the considerations required by § 6330(c)(3) and did not abuse her discretion in sustaining the IRS's levy on the Goldberg's property. The Tax Court therefore affirmed the settlement officer's decision.

The Goldbergs now appeal.

### III. Analysis

The Tax Court got this right. A straightforward application of TEFRA and its implementing provisions to the facts leads us to conclude that the Goldbergs cannot escape their partnership tax liabilities by asserting that the IRS failed to mail the NBAPs when the IRS did mail the FPAAs and the Goldbergs had actual notice of the partnership-level proceedings.

### A. The IRS Met Its Statutory Requirements by Mailing the FPAAs

The Goldbergs' biggest hurdle in demonstrating that they did not have an opportunity to object during the TEFRA proceedings is the IRS's showing that it properly mailed the FPAAs. The Goldbergs never challenged the Office of Appeals' or the Tax Court's finding that the FPAAs were mailed—and that the Goldbergs therefore received the FPAAs—until they filed suit in this court. Regardless, we see no error in the Tax Court's review of the Office of Appeals' determination.

The Office of Appeals reviewed the IRS's internal records and mailing lists to establish that that the FPAAs were validly sent via certified mail in 2007. The Goldbergs did not object, leaving the Office of Appeals entitled to take the IRS's showing as substantial evidence to demonstrate proper mailing—and thus adequate notice to the Goldbergs—of the FPAAs. See, *e.g.*, *Keado v. United States*, 853 F.2d 1209, 1213–19 (5th Cir. 1988) (affirming a settlement officer's finding based on similar evidence); see also 26 U.S.C. § 6330(c)(3)(A) (giving the settlement officer authority to verify that notices were sent based on the IRS's evidence). In reviewing the Office of Appeals' decision, the Tax Court observed that the Goldbergs had not

challenged the settlement officer's FPAA finding, and concluded there were otherwise no errors with that determination.

Given the Tax Court's proper finding that the IRS mailed the FPAAs, our legal conclusion flows directly from the Tax Code. When the IRS fails to mail an NBAP—as the Goldbergs allege here—the relief is statutory. Section 6223(e) provides remedies based on the status of the partnership-level determination at the time the "Secretary mails the partner notice of the proceeding"—here, the FPAAs that the IRS mailed to the Goldbergs in 2007.

Because the FPAAs were mailed in 2007 but the partnership tax adjustment amounts were not finalized by the Tax Court until 2013, the Goldbergs' relief is provided under § 6223(e)(3), titled "Proceedings still going on." When partners receive an FPAA after having failed to receive an NBAP, they can opt for an individual settlement or conversion to nonpartnership items. Although the Goldbergs qualified for this relief, they never elected to pursue either of these remedies. That was their fatal mistake because the statute affords no other relief. The Tax Code makes clear that partners who fail to opt out of the partnership-level proceedings are bound to the final FPAA determinations. See *id.* § 6221 ("[T]he tax treatment of any partnership item … shall be determined at the partnership level.").

And because the Goldbergs had this opportunity to challenge the underlying tax liability given the IRS's valid FPAA mailings before the partnership proceedings ended, they were expressly precluded from bringing this challenge in a CDP hearing. See *id.* § 6330(c)(2)(B), (4)(C). The Tax Court did

not err in affirming the Office of Appeals' decision to disallow such a challenge in the Goldbergs' CDP hearing.

### B. The Goldbergs Received Actual Notice of the TEFRA Proceedings

The Tax Court correctly identified a second reason supporting denial of the Goldbergs' petition: Ronald had actual notice of the TEFRA proceedings, in addition to the notice provided by the FPAAs.

Remember what happened in October 2010. It was then that Ronald corresponded by letter with the IRS Commissioner while the TEFRA proceedings were ongoing. In that letter, Ronald contended that the IRS could not collect taxes for adjustments made to the Alpha and Matador partnership items because he believed the three-year statute of limitations had expired. At no time—in this appeal or in the administrative proceedings before the IRS—has Ronald contested the authenticity of his October 2010 letter. Nor has he ever suggested, let alone demonstrated, that he did anything beyond sending the letter. At oral argument, he explained that he received notice in 2010 from another partner, and not the IRS, so he contended that the IRS's failed NBAP mailing affords him separate statutory relief. But he offers no satisfactory explanation for why he did not accept the Commissioner's invitation to participate in the TEFRA proceedings by challenging the tax assessment on statute-of-limitations grounds.

Ronald's inaction brought with it a legal consequence. The Tax Code is clear that taxpayers may challenge their underlying tax liability in a CDP hearing only when they "did not otherwise have an opportunity to dispute such tax liability." *Id*. § 6330(c)(2)(B). This limitation applies here. Ronald

Goldberg had an actual opportunity to dispute his tax liability in 2010 while the Tax Court reviewed the Alpha and Matador FPAAs, and he declined to take that opportunity to raise the statute-of-limitations challenge he now brings to a third tribunal (our court) more than a decade later.

Nor can the Goldbergs show that the partnership adjustment proceedings violated their due process rights. The Commissioner provided the Goldbergs with a chance to participate in the proceedings—through valid mailing of an FPAA and by specific invitation in the October 2010 correspondence—and they declined. We see no due process issues here, where the Goldbergs had notice and opportunity to be heard.

To be sure, we do not conclude that Ronald's actual notice alone supports a finding that he is precluded from challenging his liability. We recognize that § 6223(e)'s provision of relief seems predicated on the IRS's valid mailing of at least one of the NBAP or FPAA. See *id.* § 6223(e)(2) (providing relief when "the Secretary mails the partner notice of the proceeding" and proceedings are finished); see also *id.* § 6223(e)(3) (providing relief when § 6223(e)(2) "does not apply" and proceedings are ongoing). In a situation where the IRS failed to properly mail both the NBAP and FPAA, we are less certain of the statutory relief afforded to that tax partner. But those are not the facts here, so we save that issue for another day.

### C. The Goldbergs' Remaining Arguments

The Goldbergs urge a different conclusion and ask us to dismiss the case or remand for reconsideration of their statute-of-limitations challenge to the underlying tax liability. But we find no basis for doing so.

The Goldbergs have spilled much ink on the IRS's alleged failure to mail the NBAPs. They may be right that the IRS never mailed the notices. The IRS insists that it did but cannot tell us with certainty. For our part, we are confident that we do not have to resolve this factual dispute to resolve the Goldbergs' appeal. The IRS's mailing of the NBAPs is not controlling because the Tax Code authorized two forms of notice: the notice that proceedings had begun (the NBAP) and the notice that proceedings had concluded (the FPAA). Under the remedies provided in § 6223(e), either type of notice suffices to give partners the opportunity to participate in the TEFRA proceedings, and the mailing of both is not necessary for them to do so. The Goldbergs can point to no provision of the Tax Code that provides them with relief beyond that which the statute afforded them here.

One final matter warrants mention. The Goldbergs insist that the Tax Court erred by denying their motion to compel discovery for additional information about the IRS's NBAP mailings. Given the deferential standard of review and our determination that the Tax Court's decision did not depend on additional evidence of the IRS's mailings, we reject the Goldbergs' argument. The Tax Court did not abuse its discretion in denying the Goldbergs' motion to compel discovery for evidence that the court deemed irrelevant.

For these reasons we AFFIRM.